567 S.E.2d 862

**The STATE, Respondent,**

v.

**Michael J. PASSARO, Appellant.**

No. 25507.

Supreme Court of South Carolina.

Heard May 29, 2002.
Decided July 29, 2002.

500

Deputy Chief Attorney Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor J. Gregory Hembree, of Conway, for respondent.

BURNETT, Justice:

Michael J. Passaro ("Passaro") pled guilty to murder and arson and was sentenced to death. Passaro's counsel filed an appeal to which Passaro filed a motion to dismiss. We ordered the circuit court to conduct a competency hearing. The court found Passaro competent to waive his right to appeal his conviction.

## FACTS

The facts are not disputed. Passaro and his wife, Karen Passaro ("Karen"), separated because of marital difficulties. Karen, subsequently, filed for divorce. The family court issued a temporary order affecting custody of the Passaro's child, Maggie.

The order granted Passaro weekend custody of Maggie, beginning on Friday, when he would pick her up from daycare, and ending Monday, when he returned her to daycare. Karen would pick up Maggie on Monday afternoon and keep her until Friday. Passaro and Karen had conflicts concerning the custody arrangement, particularly during holidays.

On the Monday before Thanksgiving, Passaro did not take Maggie to daycare. Instead, he drove his van to Karen's condominium complex; poured gasoline on the floor of the vehicle; ignited the gasoline and jumped out leaving Maggie to die strapped in a child's safety seat. Investigators found a suicide note in the van, written by Passaro, explaining his wish

to kill himself and Maggie so they could spend time in heaven away from Karen.[1]

After Passaro's indictment, the State served notice of its intent to seek the death penalty. The trial judge conducted a *Blair*[2] hearing and found him competent, *i.e.*, he understood the charges against him and was able to assist his court-appointed counsel.

Passaro was arraigned on the day of the competency hearing and entered pleas of guilty to both charges. The trial court accepted the pleas after finding they were entered freely, voluntarily and intelligently.[3] The court reconvened two days subsequent to begin the required sentencing phase.

At the conclusion of the sentencing hearing the trial judge found the existence of the following statutory aggravating circumstances beyond a reasonable doubt: 1) physical torture;[4] 2) offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person;[5] 3) the murder of a child 11 years of age or younger.[6] Although the court found mitigating circumstances,[7] Passaro waived his right for the court to consider any mitigation.

---

1. The letter is caustic in tone, urging at one point for Karen to not kill herself so she may "live in pain [because of Maggie's death] for the rest of her life."

2. *State v. Blair*, 275 S.C. 529, 273 S.E.2d 536 (1981).

3. The judge noted Passaro took 40 milligrams/daily of the drug Prozac, which did not impair his ability to assist counsel.

4. S.C.Code Ann. § 16–3–20(C)(a)(1)(h) (Supp.2001).

5. S.C.Code Ann. § 16–3–20(C)(a)(3) (Supp.2001).

6. S.C.Code Ann. § 16–3–20(C)(a)(10) (Supp.2001).

7. The trial court found the existence of two statutory mitigating circumstances: 1) Passaro had no significant history of prior criminal conviction involving the use of violence against another person; 2) the murder was committed while the defendant was under the influence of mental or emotional disturbance. *See* S.C.Code Ann. § 16–3–20(C)(b)(1)–(2) (Supp.2001).

Passaro's counsel, at Passaro's behest, waived closing arguments. Passaro made a brief closing statement:

Donna [8] was a big part of my life. I was devastated by her passing, and when I met Karen I thought I would have another chance at happiness. We started having difficulties in our marriage and happiness turned to tragedy. Thank you, your honor.

The trial judge concluded the evidence warranted the imposition of the death sentence for murder and a concurrent sentence of 30 years for arson.

Passaro's counsel filed a timely notice of appeal. Passaro, *pro se*, filed a motion to dismiss his appeal. We remanded the matter to the circuit court pursuant to *Singleton v. State*, 313 S.C. 75, 437 S.E.2d 53 (1993), to determine whether Passaro was competent to waive his right to appeal.

At the *Singleton* hearing Dr. Pamela Crawford ("Dr.Crawford"), an expert qualified in forensic psychiatry, testified Passaro was competent, under the *Singleton* standard, to waive his appeal and to be executed. She found he suffered from no major mental illness, though he had suffered from mild depression in his past, including periods after the death of his first wife and after his incarceration for the murder of his daughter. Dr. Crawford's findings were consistent with the report of the findings of the defense psychiatric expert.

The court found Passaro competent under the *Singleton* standard. Specifically, the court found Passaro able to understand the nature of the proceedings, the crimes for which he was tried, the reason for and the nature of the punishment, and he possessed sufficient mental capacity or ability to rationally communicate with counsel.

We required the parties submit briefs on Passaro's competence to waive his appeal. We also denied Passaro's motion to dismiss his counsel and appear *pro se*. However, we allowed Passaro to file an additional *pro se* brief. In a letter received March 5, 2002 waiving his right to file a *pro se* brief, Passaro wrote to appellate counsel:

---

8. Donna was Passaro's first wife. She was struck and killed by an automobile while attempting to help another motorist involved in a separate accident. She died in 1988.

In following the court's order of December 17, 2001, I understand that I have 20 days to respond to your [Office of Appellate Defense] brief and the state's brief.

I received a copy of your brief and the state's brief on February 11, 2002 and after reading both briefs, I do not feel that any more [sic] is needed to be said. I agree with the state.

Therefore, I am waiving the 20 days for my response.

## ISSUE

I. Can an individual who pleads guilty to murder and waives introduction of mitigating evidence waive his right to general appellate review?

II. Is Passaro's waiver of his right to general appellate review competent, knowing and voluntary?

## DISCUSSION

### I

### Right to Waive Appeal

■ A capital defendant may waive the right to general appellate review. *State v. Torrence*, 317 S.C. 45, 451 S.E.2d 883 (1994) (*Torrence* II). However, this right is limited to competent individuals whose decision is knowing and voluntary. *Id.*

■ Appellate counsel argues this Court should not allow Passaro to waive his right to general appellate review. Appellate counsel bases this argument on the theory that Passaro, who pled guilty to capital murder and then waived mitigation at the penalty phase, should not be allowed to prevent review of his conviction and sentence by waiving appellate review. To do so, counsel insists, is "little more than government-assisted suicide." [9]

---

9. Death row volunteers are neither new or unusual. *See* Christy Chandler, *note, Voluntary Executions*, 50 Stan. L.Rev. 1897 (1998); Richard C. Dieter, *Ethical Choices for Attorneys Whose Clients Elect Execution*, 3 Geo. J. Legal Ethics, 799, 802–03 (1990); Jane L. McClellan, *Stopping the Rush to the Death House: Third–Party Standing in Death–Row Volunteer Cases*, 26 Ariz. St. L.J. 201, 202, 212 (1994). States executed 302 inmates between 1973 and 1995, with 12% of those

Our decisions in *Torrence II* and *State v. Torrence*, 322 S.C. 475, 473 S.E.2d 703 (1996) (*Torrence* III), permit an individual to waive general appellate review of a death penalty conviction. Appellate counsel suggests the distinction between the *Torrence* line of cases and the instant case is our affirming Torrence's underlying conviction in our initial review of the case. *See State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (*Torrence* I) (affirming conviction, but reversing the sentence of death and remanding for new sentencing proceeding). Because this Court has never reviewed Passaro's conviction, counsel asserts we should refuse any request to waive appeals in the case. We disagree.

It is true Torrence did not waive his right to appellate review until after this Court upheld his conviction. When Torrence was sentenced to death the second time, he chose to waive appellate review because he could, at best, receive life without parole at a new sentencing hearing. Torrence preferred the execution of his death sentence to the only alternative, life without parole.

Passaro, unlike Torrence, pled guilty. Allowing individuals, even defendants facing capital punishment, to plead guilty is recognized both in this state and throughout the nation. *See State v. Shaw*, 273 S.C. 194, 255 S.E.2d 799 (1979) (upholding death sentence of two defendants who pled guilty to murder) *overruled on other grounds* by *Torrence I, supra; see generally* Barry J. Fisher, *Judicial Suicide or Constitutional Autonomy? A Capital Defendant's Right to Plead Guilty*, 65 Alb. L.Rev. 181 (2001) (noting all states except Arkansas, Louisiana and New York allow a defendant in a capital case to plead guilty). By allowing Passaro to plead guilty, we allow him to significantly restrict the scope of review on appeal because a guilty plea generally constitutes a waiver of non-jurisdictional defects and claims of violations of constitutional rights. *See Rivers v. Strickland*, 264 S.C. 121, 124, 213 S.E.2d 97, 98 (1975) (stating "[t]he general rule is that a plea of guilty, voluntarily and understandingly made, constitutes a waiver of non-jurisdictional defects and defenses, including claims of

___

being the result of inmates refusing their right to appeal or petition for various post-conviction relief. NAACP Legal Defense and Education Fund, *Death Row U.S.A.* 3–9 (1995).

violation of constitutional rights prior to the plea"). Counsel does not argue or suggest Passaro was not guilty or his guilty plea defective.

We disagree with appellate counsel's argument that allowing an individual to plead guilty to murder, be sentenced to death and waive his right to general appellate review is tantamount to State assisted suicide. While the competency of the guilty verdict may be in doubt in some future case, it is not in doubt here as Passaro pled guilty below and confirmed his guilt before this Court. *See State v. Sroka,* 267 S.C. 664, 230 S.E.2d 816 (1976) (affirming guilty verdict by jury based on overwhelming evidence presented at trial and later admission of guilt by defendant in open court).

Importantly, this Court is the final body to decide whether to grant Passaro's waiver. Because of the uniqueness of the death penalty, we carefully review, individually, a petition to waive appellate review. We discern no reason Passaro should be denied his right to waive appellate review because he chose to plead guilty.

## II

### Ability to Waive Appeal

We limit a death row inmate's ability to waive appeals to those who are competent and whose decision to do so is both knowing and voluntary. *See Torrence II, supra.* Passaro is competent to waive his right to appeal. His decision to do so is knowing and voluntary.

### A. Competency

■ The standard to determine competency, set forth by *Singleton v. State, supra,* is: 1) whether the defendant can understand the nature of the proceedings, the crimes for which he was tried, and the reason for the punishment; and 2) whether the convicted defendant possesses sufficient capacity or ability to rationally communicate with counsel. *See Torrence II, supra.*

■ The State argues the only evidence, particularly Dr. Crawford's report, presented at the competency hearing demonstrates Passaro is competent under *Singleton.* We agree.

The evidence presented at the hearing establishes Passaro suffers from no major mental illness. The evidence also shows he understands the nature of appellate proceedings, including the relevant issues of appeal, the role of his attorneys and the function of the court system in the process. Passaro was able to state why he was tried and why he received a death sentence.

Dr. Crawford noted Passaro was aware of the finality of the death penalty and was able to discuss in detail his reason for waiving his appeal. The defense expert's report provided a similar evaluation.

We questioned Passaro at length during oral arguments. Our own questioning of him leaves no doubt of his competency. At oral arguments we questioned Passaro extensively about his trial, the appeals process and the consequence of his request to terminate any appeals on his behalf. It is our observation that Passaro possesses the capacity and ability to communicate with counsel.

There is no evidence suggesting Passaro is not competent under the *Singleton* standard. We conclude, based on the hearing below and our questioning, that Passaro is competent to waive his appeal.

## B. Knowing and Voluntary

■ The evidence presented at the competency hearing and Passaro's testimony before this Court establishes the wavier of his right to appellate review is knowing and voluntary.[10] Dr. Crawford noted Passaro understood the consequences of his action. No evidence suggests Passaro is being coerced into waiving his appeal.

While defense counsel notes Passaro, at Dr. Crawford's second visit on March 20, 2001, expressed the possibility he may change his mind, he made no such comments at the competency hearing. In his letter to defense counsel waiving his right to file a *pro se* brief, Passaro unequivocally agreed

---

10. Passaro has been prescribed medication, primarily Prozac, to calm him and to help him sleep. Passaro stated the medication does not affect his ability to reason, coherently or rationally. The medical evidence presented at the hearing below confirms this assessment.

with the State's brief. Such a statement reaffirms his prior commitment to waive his right to appeal.

At oral argument, we questioned Passaro extensively about the voluntary nature of his request. We also questioned whether he fully understood the appellate process and what he could hope to gain by appealing his sentence. We conclude Passaro's request is knowingly and voluntarily made.

## III

### Sentence Review

Having concluded Passaro may waive his right to general appellate review, we proceed to review the sentence as required by S.C.Code Ann. § 16-3-25(C) (1976).[11]

### A. Arbitrariness Review

We are required to consider whether a death sentence "was imposed under the influence of passion, prejudice, or any other arbitrary factor." S.C.Code Ann. § 16-3-25(C)(1) (1976). Appellate counsel has not argued Passaro's sentence was influenced by passion, prejudice or any other arbitrary factor. Having reviewed the record we conclude the sentence was not influenced by such arbitrary factors, but was the product of sound deliberation based on the evidence. *See State v. Shaw, supra, overruled on other grounds* by *Torrence I, supra.*

### B. Circumstances of Aggravation Review

The trial judge imposed the death penalty after finding the following statutory aggravating circumstances beyond a reasonable doubt: 1) physical torture; [12] 2) offender by his act of

---

11. We have never directly addressed whether a defendant may waive sentence review under S.C.Code Ann. § 16-3-25(C) (1976). *See, e.g., Patterson v. Commonwealth,* 262 Va. 301, 551 S.E.2d 332 (Va.2001) (allowing death row defendant to waive general appeal for errors but not sentence review) *State v. Dodd,* 120 Wash.2d 1, 838 P.2d 86 (Wash.1992). We do not address Passaro's ability to waive sentence review here because the issue has neither been raised nor briefed by either party. Because this case arises from the direct appeal filed by appellate counsel, we have conducted the sentence review. *See* S.C.Code Ann. § 16-3-25(F).

12. S.C.Code Ann. § 16-3-20(C)(a)(1)(h) (Supp.2001).

murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person;[13]  3) the murder of a child 11 years of age or younger.[14]

It is not disputed Maggie Passaro was under 11 years of age at the time of the murder.  The child was 2 years of age at the time of her death.  Because the State has proved the existence of at least one aggravating circumstance beyond a reasonable doubt it is not necessary to address the other aggravating circumstances.  *See State v. Chaffee*, 285 S.C. 21, 328 S.E.2d 464 (1984), *overruled on other grounds* by *Torrence I*, *supra* (death penalty may be imposed upon finding at least one statutory aggravating factor).

After a review of the record, we conclude the evidence supports the trial judge's findings beyond a reasonable doubt.

## C.  Proportionality Review

The United States Constitution requires the death penalty to be imposed only if the sentence is "neither excessive nor disproportionate in light of the crime and the defendant." *State v. Copeland*, 278 S.C. 572, 590, 300 S.E.2d 63, 74 (1982).  In conducting a proportionality review, this court searches for "similar cases" where the death sentence has been upheld. *Id.*

A review of case law reveals no factually similar case, *i.e.*, the murder of a person under eleven years of age by arson.

This Court has, however, upheld the death sentence in cases where a defendant has murdered a person under the age of eleven. *See State v. Ard*, 332 S.C. 370, 505 S.E.2d 328 (1998) (upholding death sentence for defendant convicted of murder of his unborn, but viable, son); *State v. Rosemond*, 335 S.C. 593, 518 S.E.2d 588 (1999) (death penalty was proper for a defendant who murdered his girlfriend's ten-year old daughter by shooting her); *State v. Wilson*, 306 S.C. 498, 413 S.E.2d 19 (1992) (death sentence was proportional to crime

---

13.  S.C.Code Ann. § 16–3–20(C)(a)(3) (Supp.2001).

14.  S.C.Code Ann. § 16–3–20(C)(a)(10) (Supp.2001).

where defendant gunned down elementary school students). Passaro's crime is no less gruesome than those, perhaps more so considering the evidence Passaro knowingly and intentionally started the fire, jumped from the van, and failed to inform rescuers that his child was still strapped to a safety seat in the vehicle. The brutality of the murder is underscored by evidence the victim was alive during the fire, succumbing to death only after the intense heat caused her severe pain and suffering.

Evidence of Passaro's individual characteristics show he suffered slight mental or emotional disturbance at the time of the murder and did not have a substantial history of violent criminal conduct. We upheld a death sentence under similar mitigating circumstances in *State v. Wilson, supra.* The death sentence is proportional to the characteristics of this crime and the individual defendant.

## CONCLUSION

Passaro may waive his right to general appellate review. He is competent to do so, and his request is both knowing and voluntary. We further find the death sentence was properly imposed after finding the existence of at least one aggravating circumstance. The sentence was not imposed arbitrarily and was not disproportionate.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.