661 S.E.2d 92

**David Mark HILL, Petitioner**

v.

**STATE of South Carolina, Respondent.**

**No. 26477.**

Supreme Court of South Carolina.

Heard April 1, 2008.
Decided April 28, 2008.

David Warren Miller, of Smith Massey Brodie Thurmond & Guynn, of Aiken, and Melissa Jane Reed Kimbrough, of Kimbrough & Longshore, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Assistant Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J. Brown, all of Columbia, for Respondent.

Justice WALLER:

This matter concerns a capital defendant who has expressed a desire to waive his post-conviction relief (PCR) proceedings and all future appeals and have an execution date set. By order dated July 24, 2007, we remanded the matter to Judge Doyet Early to conduct a hearing to determine whether Hill is competent to waive his right to further review and, if so, whether his waiver is knowing and voluntary. After a hearing, Judge Early found Hill competent to waive his rights; he also found Hill's waiver to be knowing and voluntary. Counsel for Hill concedes the record "fully supports Judge Early's order." After an extensive review of the record in this case, along with a thorough examination of Hill during oral arguments before this Court, we affirm the trial judge's findings that Hill is competent to waive appellate review, and his decision to do so is both knowing and voluntary.

## FACTS

Hill was convicted of three counts of murder after he walked into the Aiken County Department of Social Services

office building on September 16, 1996, and shot and killed three employees; he was sentenced to death. The underlying facts, as set forth in his direct appeal to this Court, are as follows:

When these murders took place, [Hill] was married and had three children: a three-year-old daughter who was a quadriplegic [1] and twin two-year-old boys. DSS became involved with the family because of concern about the parents' abuse of prescription drugs. The children were eventually removed from the home.

On the morning of September 16, 1996, [Hill] had a telephone conversation with his caseworker, James Riddle. [Hill] then called his sister-in-law, Tammy Campbell, to ask for a ride to the DSS office. Tammy and her husband gave [Hill] a ride to the Business & Technology Center where the DSS office was located. On the way, [Hill] said that he was tired of people "playing God" with his children. The Campbells dropped [Hill] off at the front of the building.

Sometime before 2:00 p.m., several DSS workers returned to work after a birthday luncheon. Annette Michael was walking towards her cubicle in the DSS office area when another worker, Josie Currie, approached with her hands up. [Hill] was behind Josie with a gun. Josie asked Annette where James Riddle's office was. When Annette motioned with her hand, [Hill] told her to step in behind Josie. The three of them walked down the aisle to James's cubicle. James was seated at his desk speaking on the telephone. Josie stepped into the cubicle and said, "This man would like to see you."

[Hill] fired a shot into the cubicle, hitting James in the head. He then pointed the gun over Annette's shoulder and shot Josie in the head. Annette fell with Josie as a third shot was fired. Annette saw James fall over in his chair and she saw a hole in his forehead before she fainted on the floor. Another DSS worker, Michael Gregory, was found dead of a gunshot wound in the men's restroom. Both Josie and James died within the next few hours. Annette was not injured.

---

1. The daughter, who was paralyzed in a 1994 car accident, died in 1998.

The next morning, police were still searching for [Hill]. At around 9:20 a.m., appellant was found lying on the railroad tracks behind the building with his gun nearby. He had a bullet hole through the roof of his mouth and an exit wound in the top of his skull. Although he was seriously injured, [Hill] was able to speak. After he was taken to the hospital, he was given Miranda warnings. [Hill] admitted to the shootings. He said he first shot Michael Gregory in the restroom because Gregory had seen him. He shot James Riddle because Riddle was his caseworker. He shot Josie Currie "because she was black."

State v. Hill, 361 S.C. 297, 300–301, 604 S.E.2d 696, 697–698 (2004), cert. denied, 544 U.S. 1020, 125 S.Ct. 1977, 161 L.Ed.2d 860 (2005). This Court affirmed Hill's murder convictions and sentences.[2]

Thereafter, Hill filed an application for PCR. On May 30, 2007, Solicitor Barbara Morgan received a letter from Hill requesting her to assist him to "drop the rest of my appeals and have an execution date set." The letter was forwarded to the Court by the State. Thereafter, on June 21, 2007, counsel for Hill submitted an affidavit to the Court indicating Hill had changed his mind and did **not** wish to drop his appeals.[3] On July 16, 2007, after consulting with counsel, Hill once again advised the Court he wished to withdraw his pending PCR application and abandon any remaining appeals. The Court remanded the matter to Judge Early for a competency evaluation pursuant to Singleton v. State, 313 S.C. 75, 437 S.E.2d 53 (1993). After a hearing, a competency evaluation by Dr. Donna Schwartz–Watts, and a thorough examination of Hill, Judge Early issued an order finding Hill competent to waive his appeals, and found Hill's decision was made knowingly and voluntarily.

2. Hill's attempted murder conviction and related weapons charge were vacated, and his second degree burglary conviction was reversed. Hill, supra.

3. In the interim, Judge Early ordered a competency evaluation, pursuant to Council v. Catoe, 359 S.C. 120, 597 S.E.2d 782 (2004), authorizing Dr. Donna Schwartz–Watts to determine if Hill was competent to proceed with PCR.

## ISSUE

Does the evidence support a finding that Hill is competent to waive further review, and that his decision to do so is made knowingly and voluntarily?

## LAW

 This Court is charged with the responsibility of issuing a notice authorizing the execution of a person who has been duly convicted in a court of law and sentenced to death. *Hughes v. State,* 367 S.C. 389, 395, 626 S.E.2d 805, 808 (2006). We will issue an execution notice after the defendant has exhausted all appeals and other avenues of PCR in state and federal courts, or after that person, who is determined by this Court to be mentally competent, knowingly and voluntarily waives such appeals. *See In re Stays of Execution in Capital Cases,* 321 S.C. 544, 471 S.E.2d 140 (1996); *Roberts v. Moore,* 332 S.C. 488, 505 S.E.2d 593 (1998).

 In *Singleton v. State,* we set forth the test to ascertain whether a capital defendant is competent to waive his right to further appellate review:

The first prong is the cognitive prong which can be defined as: whether a convicted defendant can understand the nature of the proceedings, what he or she was tried for, the reason for the punishment, or the nature of the punishment. The second prong is the assistance prong which can be defined as: whether the convicted defendant possesses sufficient capacity or ability to rationally communicate with counsel.

313 S.C. at 84, 437 S.E.2d at 58; *accord State v. Torrence,* 317 S.C. 45, 47, 451 S.E.2d 883, 884 (1994). This standard is the same as that required before a defendant may be executed. *Torrence,* 317 S.C. at 47, 451 S.E.2d at 884.

 When considering a request by a capital defendant to waive the right to further review, we must determine whether the defendant is competent and whether the decision is knowing and voluntary. *See Reed v. Ozmint,* 374 S.C. 19, 647 S.E.2d 209 (2007); *Hughes v. State,* 367 S.C. 389, 395, 626 S.E.2d 805, 808 (2006) (Court will issue an execution notice if the person, who is determined by the Court to be mentally

competent, knowingly and voluntarily waives appeals and
PCR); *State v. Downs*, 369 S.C. 55, 631 S.E.2d 79 (2006)
(capital defendant may not waive his appellate or PCR rights
unless Court first determines the defendant is competent);
*State v. Torrence*, 317 S.C. 45, 46, 451 S.E.2d 883, 883 (1994)
(waiver may not be found unless Court first determines defen-
dant is competent and his decision is knowing and voluntary).
In making a determination on the competency of a convicted
capital defendant to waive his appellate or PCR rights, we are
not bound by the circuit court's findings or rulings, although
the circuit court judge, who saw and heard the witnesses, is in
a better position to evaluate their credibility and assign com-
parative weight to their testimony. *Hughes*, 367 S.C. at 395,
626 S.E.2d at 808. The matter is akin to one arising in our
original jurisdiction because it is the Court which must finally
determine whether a particular capital defendant is mentally
competent to make a knowing and voluntary waiver of his
appellate or PCR rights. *Id.* at 395–96, 626 S.E.2d at 808.

In deciding the issue of a capital defendant's competen-
cy, we review the defendant's history of mental competency;
the existence and present status of mental illness or disease
suffered by the defendant, if any, as shown in the record of
previous proceedings and in the competency hearing; the
testimony and opinions of mental health experts who have
examined the defendant; the findings of the circuit court
which conducted a competency hearing; the arguments of
counsel; and the capital defendant's demeanor and personal
responses to the Court's questions at oral argument regarding
the waiver of appellate or PCR rights. *Reed v. Ozmint,*
*supra,*

## DISCUSSION/ANALYSIS

Here, at the hearing before Judge Early in August
2007, the only witnesses were Hill himself, and Dr. Donna
Schwartz–Watts, an expert in the field of forensic psychiatry.

Dr. Schwartz–Watts testified Hill had had some very severe
depressions and anxiety disorders in the past, but that those
were now in remission, and Hill was not on any medications at
all for mental illness. She also opined that although Hill had
some brain damage and neurological impairments as a result

of the gunshot wound to his head, he had made remarkable improvement and had developed collateral ways of thinking. Although it sometimes takes Hill a while to answer a question, and he is sometimes distractible, he can usually get back to the point. He has a bit of trouble with short term memory, but Dr. Schwartz–Watts did not classify it as a serious organic condition; she diagnosed a cognitive disorder. She stated that Hill "is incredibly intelligent and in possession of his faculties."

As to Hill's decision to waive his appeals, Dr. Schwartz–Watts testified the decision was based on a number of rational bases. She stated Hill is very close to his father, whose health was beginning to fail, and Hill wanted to wait until such time as his father would not be aware of his decision to waive his appeals. When his father was hospitalized and placed on "do not resuscitate status," Hill felt it was time. Also, Hill's religious beliefs as a Mormon formed some of the basis for the decision. Schwartz–Watts opined that Hill understands what he was convicted for, his sentence, and the nature of the punishment, and that he clearly knows the rights he is giving up. She testified Hill trusts his attorneys and even believed he was likely to prevail if he proceeded with PCR. Dr. Schwartz–Watts also testified there was no evidence that Hill's decision to waive is based on any type of psychosis, delusion or outside influence.

Judge Early questioned Dr. Schwartz–Watts about Hill's initial request in May 2007 to drop his appeals, then his brief change of mind in June 2007, then his reaffirmation to waive them in July 2007. Dr. Schwartz–Watts testified Hill's wavering was due to his uncertainty concerning his father's health status and family issues.

Judge Early then examined Hill. Hill stated the only medication he was currently taking is Zantac for heartburn. He testified that he previously suffered depression, post-traumatic stress disorder, and anxiety attacks, but that he did not feel he was currently suffering from any of those illnesses. With regard to the self-inflicted gunshot on the day of the crimes, Hill testified he had some brain damage as a result, which sometimes affects his memory, and he has a small hole in the roof of his mouth which he believes sometimes causes

headaches, but other than that, he had no significant impairments. He was not taking any medication for brain damage.

Hill testified as to the crimes for which he was convicted, and the sentences, and his understanding of his appeal to this Court and the United States Supreme Court. He understood his PCR application was to challenge the effectiveness of his counsel. Understanding all of these things, Hill testified he wished to give up his right to proceed with the hearing. Judge Early went through each allegation of ineffective assistance of counsel with Hill, and advised him that if he prevailed, he would perhaps be entitled to a new trial. The trial judge then requested Hill to explain why he wanted to withdraw his PCR application and abandon any rights to appeal. Hill responded, in part, as follows:

> Well, it's something I've been thinking about since I got to death row in 2000. By then one of my trial attorneys—he didn't really talk me out of it. He just basically said, you don't want to do that. . . . And he mentioned my dad and my dad at the time was ill . . . he said that could, you know,—that could be the—that could put him over the edge. So, I was concerned about that, and he's been coming to see me regularly until that time. That was about two years ago, . . . and the last time I saw him was last August and I knew something was wrong . . . and then I got a letter from my mom a couple of months ago and she said that he was near death . . . she got to the hospital and they wanted her to sign a D.N.R. . . . I had mentioned it to him too, and she told me in the letter not to—if I decided to do that not to write and tell him but tell one of my lawyers or tell her and they would gather the family around to tell him and that he wanted to die before I did and he would if I would just talk to him about it.
>
> So, that was a lot to do with my decision—his health—and part of my religious beliefs are that if you kill somebody, you shed somebody else's blood, that your blood has to be shed or you have to die in order to be forgiven for that, and that's one of my concerns and then there's some health issues that I'm dealing with that's . . . bothersome at times . . . There's not really one big reason. There is just— several different factors.

The trial court then questioned Hill as to his understanding of what he was tried for and the reason for his punishment. He understood he had been convicted for killing three people, and that he could be executed by electrocution or lethal injection. He testified that if his decision to withdraw his PCR application and waive further appeals were granted, he understood he would be put to death.

Judge Early thoroughly explained the possibilities if Hill proceeded with PCR and were granted a new trial. Hill testified he believed he had received a fair trial, and a fair sentence, and that he had not been threatened or coerced into this decision. Judge Early then questioned Hill as to his vacillation in May, June and July 2007 as to whether he wanted to withdraw his appeals. Hill explained, "I was sure at the time, and [my attorney] came immediately to see me at Lieber and she asked—talked to me about some things and asked me to give her until the end of the month before I made a final decision." Hill did so and then reiterated his request to withdraw his appeals. · Hill finally advised Judge Early that it was still his desire to withdraw all appeals and have the death sentence carried out. ·

Judge Early dismissed Hill from the stand and then inquired of Dr. Schwartz–Watts whether Hill's responses in any way caused her to change her opinion. She responded, "not at all, your honor. It's confirmed it." [4]

Judge Early issued his order on August 20, 2007 finding the requirements of *Singleton v. State* were met, and that Hill is competent to waive his right to further collateral review of his convictions and sentences; he understands the nature of the proceedings, the crimes for which he was sentenced, and the nature of the punishment. Judge Early also found Hill's decision to waive further review knowing and voluntary.

This Court personally examined Hill on April 1, 2008. He confirmed that it is still his desire to waive his appeals and be executed. We questioned Hill extensively about the voluntary nature of his request, whether he fully understood the appellate process, and what he could hope to gain by appealing his sentence. We inquired as to his understanding of why he had

---

4. The State also introduced the portions of the trial transcript in which Hill had been found competent to stand trial.

been sentenced to death, why he preferred to be executed than to pursue his appeals. We found Hill to be articulate, intelligent, and very well aware of his present circumstances, as well as the events which gave rise to his incarceration. Both his long and short-term memory are ample, and do not appear to have been affected by his self-inflicted gunshot wound on the day of the crimes. Moreover, counsel for Hill very eloquently elaborated on Hill's decision, advising that although he and co-counsel did not agree with Mr. Hill's decision to forego any further appeals, there was no basis upon which to challenge his competency, and the decision had been contemplated by Hill for nearly eight years, and was clearly made knowingly, voluntarily, and intelligently.

The record, along with our personal examination of Hill, fully supports the trial court's ruling that Hill is indeed competent, and his decision to waive further appellate remedies is both knowing and voluntary. Accordingly, we affirm the findings of the circuit court. Hill's request to withdraw his PCR application and waive his appeals is granted.

**AFFIRMED.**

TOAL, C.J., MOORE, PLEICONES and BEATTY, JJ., concur.