707 S.E.2d 804

**The STATE, Respondent,**

v.

**Jeffrey Brian MOTTS, Appellant.**

**No. 26947.**

Supreme Court of South Carolina.

Heard Jan. 5, 2011.

Decided March 21, 2011.

638

Chief Appellate Defender Robert M. Dudek, of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General

Donald J. Zelenka, Assistant Attorney General J. Anthony Mabry, of Columbia, Solicitor Robert Mills Ariail, of Greenville, for Respondent.

Justice BEATTY.

In this capital case, a jury convicted Jeffrey Brian Motts of murdering his cell-mate at Perry Correctional Institution. Shortly after his appellate counsel filed a notice of appeal, Motts wrote to this Court indicating his desire to abandon his direct appeal and to waive all appellate review of his conviction and death sentence. In response, this Court remanded the case to the circuit court to conduct a competency hearing. Following a hearing, the circuit court found Motts competent to waive his appeals.

After conducting an extensive review of the record in this case and thoroughly questioning Motts during oral arguments before this Court, we conclude Motts is competent to waive his right to a direct appeal and that his waiver is knowing and voluntary. Additionally, we find that Motts's sentence of death is neither excessive nor disproportionate with his crime. Finally, we hold that neither the circuit court nor this Court is required to issue an order for a court-appointed psychiatrist to interview Motts, in the absence of some indicia of incompetency, immediately prior to his execution to assure that he has remained competent.

## I. Factual/Procedural Background

In 1997, a Spartanburg County jury convicted Motts of the armed robbery and murder of his great-aunt and great-uncle. The trial judge sentenced Motts to life imprisonment for each murder conviction and twenty-five years' imprisonment for the armed robbery conviction.

While Motts was serving his sentences at Perry Correctional Institution in Greenville County, his cell-mate, Charles Martin, was found dead on December 8, 2005. Motts confessed to the killing. Subsequently, a Greenville County grand jury indicted Motts for Martin's murder. Based on Motts's prior murder convictions, the State sought the death penalty.

Several witnesses at trial, including Motts, testified regarding the events surrounding Martin's murder. Angered that

Martin had lied to another inmate about Motts's involvement in "planting" a knife in the inmate's cell, Motts confronted Martin during the early morning hours of December 8, 2005. According to Motts, the verbal exchange escalated to a physical altercation with Motts hitting Martin in the head. Martin fell against the wall and started shaking. Motts then picked up Martin and bound his hands and feet using strips of cloth from his bed sheets. When Martin regained consciousness, he begged Motts not to hurt him. Motts responded by choking Martin to death. Because Martin continued to make what Motts described as a "death rattle," Motts proceeded to tie some sheets around Martin's neck to stop this noise. Martin died as the result of asphyxia due to strangulation. Motts then pushed the body under his bed in the cell.

After killing Martin, Motts smoked a cigarette, ate breakfast, smoked another cigarette, and watched television. Motts then dragged Martin's body to a common area known as "the rock." Before placing Martin's body on "the rock," he kicked Martin and stated "this is what snitches get."

Motts then reported to prison guards that he had killed Martin. After the guards found Martin's lifeless body, officers with the South Carolina Law Enforcement Division initiated an investigation by questioning Motts. During the questioning, Motts waived his *Miranda*[1] rights and then confessed to the murder.

After the jury found Motts guilty of murder, the State sought to establish the statutory aggravating circumstance that "[t]he murder was committed by a person with a prior conviction for murder." S.C.Code Ann. § 16–3–20(C)(a)(2) (2003). Accordingly, the State presented evidence regarding Motts's 1997 convictions for the murder of his great-aunt and great-uncle.

Ultimately, the jury found beyond a reasonable doubt that the murder of Martin was committed by a person with a prior conviction for murder. As a result, the jury recommended that Motts be put to death. The trial judge denied all of Motts's post-trial motions and ordered on June 4, 2008 that Motts be put to death as a result of the conviction.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The day after sentencing, Motts's trial counsel filed a notice of intent to appeal Motts's conviction and sentence. Before any briefs were filed, Motts personally wrote to this Court requesting that his execution proceed as scheduled. Specifically, Motts expressed his desire to relieve his appellate defender, represent himself, and waive his direct appeal.

Subsequently, this Court issued an order remanding the matter to the trial judge, Circuit Court Judge Larry R. Patterson, and directing him to conduct a full hearing to determine whether Motts was competent to waive his direct appeal and whether his decision to waive his right to direct appeal was knowing and voluntary.

Judge Patterson ordered that Motts be examined by two qualified examiners designated by the South Carolina Department of Mental Health. Pursuant to the order, the examiners were to determine whether Motts was competent under the standard enunciated in *Singleton v. State*, 313 S.C. 75, 437 S.E.2d 53 (1993),[2] and followed in *State v. Torrence*, 317 S.C. 45, 451 S.E.2d 883 (1994).[3]

The court-appointed examiners included: Dr. Richard Frierson, a Professor of Clinical Psychiatry for the University of South Carolina School of Medicine (USCSM); Dr. Amanda (Gowans) Salas, Fellow in Forensic Psychiatry for the USCSM; and Dr. Michael Gassen, Chief Psychologist for the Department of Mental Health. The examiners evaluated thirty-four-year old Motts on October 8, 2009, November 12, 2009, and December 16, 2009.

On January 5, 2010, the court-appointed examiners submitted a joint, fifteen-page report explaining their ultimate conclusion that Motts was competent to waive his direct appeal under the standard set forth in *Singleton* and followed in *Torrence*.

---

2. *See Singleton v. State*, 313 S.C. 75, 437 S.E.2d 53 (1993) (adopting two-prong analysis for determining a defendant's competency to be executed).

3. *See State v. Torrence*, 317 S.C. 45, 451 S.E.2d 883 (1994) (recognizing that the *Singleton* test was to be applied to a determination of whether a capital defendant was competent to waive appellate proceedings).

On April 29, 2010, Circuit Court Judge D. Garrison Hill[4] held an evidentiary hearing. During the hearing, Judge Hill heard testimony from two court-appointed psychiatrists,[5] the two trial attorneys who represented Motts in his 2007 capital trial, and Motts.

According to Dr. Frierson, the examiners reviewed the following documents: Motts's medical records dating from his childhood, transcripts from Motts's criminal trials, Motts's employment records, and Motts's records from the South Carolina Department of Corrections. In addition, the examiners compiled a "social history" by interviewing Motts, his mother, and an individual with a prison ministry who had visited Motts on death row. The examiners definitively concluded that Motts was competent to waive his right to appeal and to be executed as required under *Singleton*.

Motts's counsel called the two attorneys who represented Motts in his 2007 capital trial. Christopher Scalzo testified that Motts expressed "early on" that he did not wish for the jury to return a life sentence. In fact, Scalzo had Motts evaluated to determine whether he was competent to stand trial "because of [Motts's] initial desire to get the death penalty." However, Scalzo acknowledged that there were times when Motts was "supportive of the idea of a life sentence." Scalzo recounted Motts's closing statement to the jury in which Motts asked "the jury to give him life for his family."

Stephen Henry, the lead counsel appointed to Motts, testified Motts was cooperative "to the point where he thought that we might have a chance of getting a life sentence." Henry stated that Motts's "decision to die was made early and never waivered." As to Motts's closing statement to the jury, Henry claimed Motts was "asking for his life to be spared for

---

**4.** While the examination was being conducted, Judge Patterson retired from the bench. Pursuant to the State's request, this Court issued an order naming Circuit Court Judge D. Garrison Hill as the replacement judge and granted him the authority to perform those duties specified in the original remand order.

**5.** Neither the State nor Motts's counsel called Dr. Michael Gassen. The written report and the testimony, however, established that Dr. Gassen concurred with the opinions of the two testifying examiners.

his parents['] sake, not for his own." According to Henry, Motts expressed that "he deserved the death penalty for what he did."

Finally, Judge Hill personally questioned Motts. During this colloquy, Motts answered questions regarding his understanding of the competency proceedings, the appellate proceedings, post-conviction relief proceedings, and the death sentence. Motts also stated that he deserved the death penalty and did not want to remain incarcerated for another thirty to forty years. Motts explained that he was "100 percent" firm in his commitment to waive his appeals and that no one had threatened or coerced him to reach this decision.

On June 8, 2010, Judge Hill issued a lengthy written order in which he concluded that Motts's "decision to waive his rights to direct appeal meets the standards set forth in *Singleton v. State* and that his decision is one that has been knowingly, voluntarily, and intelligently made after careful and thoughtful consideration."

Upon receipt of Judge Hill's order, this Court directed Motts's appellate counsel to file a brief addressing the issue of whether Motts is competent to waive his right to direct appeal and whether his waiver is knowing and intelligent. After the parties filed their briefs, Motts wrote to this Court again expressing his "desire to waive all of [his] appeals, and sentence review, and not delay this any further."

## II. Discussion

### A.

Our review of this case involves a three-part analysis. Initially, we must assess whether Motts is competent to waive his direct appeal and whether this decision is knowing and voluntary. If these questions are answered in the affirmative, the question becomes whether Motts's waiver includes this Court's proportionality review of his sentence of death. Finally, we must determine whether the circuit court or this Court has a continuing duty to assure that Motts is competent to be executed. Specifically, we must consider whether Motts should be evaluated by a court-appointed psychiatrist immediately prior to his execution.

## B.

"This Court is charged with the responsibility of issuing a notice authorizing the execution of a person who has been duly convicted in a court of law and sentenced to death." *Hill v. State*, 377 S.C. 462, 467, 661 S.E.2d 92, 95 (2008). "We will issue an execution notice after the defendant has exhausted all appeals and other avenues of PCR in state and federal courts, or after that person, who is determined by this Court to be mentally competent, knowingly and voluntarily waives such appeals." *Id.*

"When considering a request by an appellant who has been sentenced to death to waive the right to appeal or pursue PCR, and to be executed forthwith, it has been our practice to remand the matter to circuit court for a hearing and ruling on whether the appellant is mentally competent to make such a waiver, and whether any waiver of appellate or PCR rights is knowing and voluntary." *Hughes v. State*, 367 S.C. 389, 395, 626 S.E.2d 805, 808 (2006). "We remand such a matter when we deem it necessary to further develop or explore the facts of a case." *Id.* "Following that competency hearing, the parties are required by this Court to file briefs and an appendix containing the testimony and evidence considered by the circuit court." *Id.* "The appellant is required, when directed by the Court, to appear at oral argument and personally respond to questions regarding the waiver of his appellate or PCR rights." *Id.*

"In making a determination on the competency of a convicted defendant to waive his appellate or PCR rights, we are not bound by the circuit court's findings or rulings, although we recognize the circuit court judge, who saw and heard the witnesses, is in a better position to evaluate their credibility and assign comparative weight to their testimony." *State v. Downs*, 369 S.C. 55, 66, 631 S.E.2d 79, 84 (2006).

In deciding the issue of a capital defendant's competency, this Court carefully and thoroughly reviews the following: the defendant's history of mental competency; the existence and present status of mental illness or disease suffered by the defendant, if any, as shown in the record of previous proceedings and in the competency hearing; the testimony

and opinions of mental health experts who have examined the defendant; the findings of the circuit court that conducted a competency hearing; the arguments of counsel; and the capital defendant's demeanor and personal responses to the Court's questions at oral argument regarding the waiver of appellate or PCR rights. *Reed v. Ozmint,* 374 S.C. 19, 24, 647 S.E.2d 209, 211–12 (2007). "We necessarily decide each case on an individual basis, and it is within our discretion whether to allow an appellant to waive his appellate or PCR rights." *Hughes,* 367 S.C. at 397, 626 S.E.2d at 809.

The standard for determining whether an appellant or PCR applicant is mentally competent to waive the right to a direct appeal or PCR is set forth in *Singleton v. State,* 313 S.C. 75, 437 S.E.2d 53 (1993). *Singleton* provides in relevant part:

The first prong is the cognitive prong which can be defined as: whether a convicted defendant can understand the nature of the proceedings, what he or she was tried for, the reason for the punishment, or the nature of the punishment. The second prong is the assistance prong which can be defined as: whether the convicted defendant possesses sufficient capacity or ability to rationally communicate with counsel.

*Id.* at 84, 437 S.E.2d at 58. "This standard of competency is the same standard required before a convicted defendant may be executed." *Hughes,* 367 S.C. at 397–98, 626 S.E.2d at 809. "The failure of either prong is sufficient to warrant a stay of execution and a denial of the convicted defendant's motion to waive his right to appeal or pursue PCR." *Id.* at 398, 626 S.E.2d at 809.

Applying the foregoing to the facts of the instant case, we conclude the evidence in the record fully supports Judge Hill's decision finding that Motts is competent to waive his right to direct appeal and this waiver has been made knowingly and voluntarily.

Notably, the three court-appointed examiners unanimously agreed that Motts met the *Singleton* standard. In their written report, the experts found Motts understood that a jury had convicted him for the death of Martin and that a judge had sentenced him to death. According to the experts, Motts

also "verbalized a basic understanding" of the appellate process and PCR. The experts further opined that Motts "possesses sufficient capacity or ability to rationally communicate with counsel."

Despite Motts's lifelong mental health issues, the experts concluded that "Motts is not evidencing current symptoms of mental illness or other deficits that would significantly compromise his present capacity to understand the nature of the proceedings, the reason or nature of the punishment, or his ability to rationally communicate with counsel." Although Motts experienced bouts of major depression, Dr. Frierson found that he was currently in "full remission." Neither Dr. Frierson nor Dr. Salas believed that Motts's decision to waive his direct appeal was a product of depression or that it constituted a desire to commit suicide.

At the competency hearing, Drs. Frierson and Salas testified that their opinion regarding Motts's competency had not changed even after interviewing Motts the day of the hearing. Drs. Frierson and Salas also informed Judge Hill that the medications Motts was currently taking did not affect his cognitive abilities.

Judge Hill and this Court also thoroughly questioned Motts. In response to these questions, Motts was able to articulate his understanding of his murder conviction and death sentence, the competency proceedings, the appellate proceedings, and the PCR proceedings. Motts also stated that he deserved the death penalty and explained that he did not want to remain incarcerated for the next thirty to forty years. Finally, Motts explained that he was firm in his commitment to waive his appeals and that no one had threatened or coerced him to reach this decision.

## C.

Having affirmed Judge Hill's ruling, the next step in our analysis is to review Motts's sentence of death.

Because there is a conflict in our jurisprudence as to whether a capital defendant may waive this Court's review of his sentence, we take this opportunity to definitively resolve this issue.

In *State v. Torrence*, 322 S.C. 475, 473 S.E.2d 703 (1996) (*Torrence* III), this Court found Torrence was competent and his decision to waive his direct appeal of a capital re-sentencing was knowing and voluntary.[6] The Court then considered the question of "whether the [sentence] review provisions of S.C.Code Ann. § 16–3–25 (1985)" could also be waived by Torrence. *Id.* at 479, 473 S.E.2d at 706. Recognizing that both constitutional and statutory rights may be waived, the Court concluded that Torrence could waive the review provisions of section 16–3–25. *Id.*

Six years after *Torrence* III, this Court reached a different conclusion. In *State v. Passaro*, 350 S.C. 499, 567 S.E.2d 862 (2002), the defendant pleaded guilty to capital murder and was sentenced to death. Subsequently, Passaro sought to waive his appeal. After concluding that Passaro could waive his right to general appellate review, this Court proceeded to review his sentence under section 16–3–25(C). In a footnote, the Court stated "[w]e have never directly addressed whether a defendant may waive sentence review under section 16–3–25(C) (1976)." *Id.* at 508 n. 11, 567 S.E.2d at 867 n. 11. The Court, however, declined to address this issue as it was neither raised nor briefed by either party. *Id.*

Section 16–3–25, the provision that addresses capital-sentencing proceedings, provides in pertinent part: "The sentence review ***shall be in addition to direct appeal, if taken,*** and the review and appeal shall be consolidated for consideration. The court shall render its decision on all legal errors, the factual substantiation of the verdict, and the validity of the sentence." S.C.Code Ann. § 16–3–25(F) (2003) (emphasis added).

 As we interpret section 16–3–25, the General Assembly contemplated a defendant's waiver of a direct appeal;

---

6. *Torrence* was the third opinion in a series of appeals. In *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (*Torrence* I), this Court affirmed Torrence's convictions but reversed his sentence of death and remanded for a new sentencing proceeding. After Torrence was re-sentenced to death, he sought to waive his appeal. Subsequently, this Court remanded to the circuit court for a competency hearing and development of a full record. *State v. Torrence*, 317 S.C. 45, 451 S.E.2d 883 (1994) (*Torrence* II). Torrence then moved to dismiss the appeal of the circuit court's decision finding him competent to waive his appeal.

however, it made no such provision as to this Court's mandatory sentence review. Although Motts is entitled to waive his personal right to a direct appeal, we hold that he cannot waive this Court's statutorily-imposed duty to review his capital sentence. *See State v. Shaw*, 273 S.C. 194, 209, 255 S.E.2d 799, 806 (1979) (holding South Carolina's statutory death-penalty procedure is constitutional and recognizing that "[t]he duty falls to this Court" to ensure that a sentence of death must conform to the statutory requirements), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991).

■ Based on our conclusion that it is this Court's statutorily-imposed duty to conduct a proportionality review of a capital sentence, we turn now to a review of Motts's sentence.[7]

■ "The United States Constitution prohibits the imposition of the death penalty when it is either excessive or disproportionate in light of the crime and the defendant." *State v. Wise*, 359 S.C. 14, 28, 596 S.E.2d 475, 482 (2004). In conducting a proportionality review, we search for similar cases in which the sentence of death has been upheld. *Id.;* S.C.Code Ann. § 16-3-25(E) (2003) (providing that in conducting a sentence review the Supreme Court "shall include in its decision a reference to those similar cases which it took into consideration").

After reviewing the entire record, we find the sentence of death was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of a statutory aggravating circumstance for the murder is supported by the evidence. As evidenced by Motts's own testimony and confession, Motts violently murdered Martin and appeared to have little remorse for his actions. Despite Martin's pleas for his life, Motts strangled Martin to death. Seemingly unaffected by the heinousness of his actions, Motts smoked cigarettes, ate

---

7. *See* S.C.Code Ann. § 16-3-25(C) (2003) (providing that Supreme Court shall determine whether: (1) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) the evidence supports the jury's or judge's finding of a statutory aggravating circumstance; and (3) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant).

breakfast, and watched television after he killed Martin. Motts then callously displayed Martin's lifeless body in a common area in order to send a message to the other inmates.

Furthermore, a review of prior cases establishes that the death sentence in this case is proportionate to that in similar cases and is neither excessive nor disproportionate to the crime. *See State v. Lindsey*, 372 S.C. 185, 642 S.E.2d 557 (2007) (holding death sentence based on single aggravating circumstance and single victim was not disproportionate to penalty imposed in other death penalty cases); *State v. Atkins*, 303 S.C. 214, 399 S.E.2d 760 (1990) (affirming defendant's murder convictions and sentence of death where jury found sole statutory aggravating circumstance that victim's murder was committed by a person with a prior conviction of murder).

### D.

Finally, we consider the issues raised by Motts's appellate counsel. In his brief, Motts's counsel argues that the circuit court and this Court have a continuing duty to assure that Motts remains competent once Motts is served with a notice of execution. Because Motts has suffered from major depression, counsel contends that Motts's competency is not static. If Motts's mental health issues return, counsel is concerned that Motts will no longer maintain an attorney-client relationship. In the event that scenario occurs, counsel asserts he will not be able to assess whether Motts has remained competent prior to execution. Given the claimed fluidity of Motts's competency, counsel argues that Judge Hill erred in ruling he did not have authority to order that a court-appointed psychiatrist examine Motts prior to his execution. In the alternative, counsel claims this Court should order the evaluation.

At the competency hearing, Motts's counsel raised this issue through his arguments to the court and questioning of Drs. Frierson and Salas. During cross-examination, Dr. Frierson acknowledged that "competency can change over time." He explained that he could not guarantee that Motts's depressive symptoms would not return within a few months and believed that such a change was "always possible." Dr. Frierson

admitted that Motts should be evaluated by a psychiatrist prior to his execution in order to ensure that Motts remained competent.

Dr. Salas agreed with Dr. Frierson's opinion. She also believed it would be a "good idea" for a psychiatrist to evaluate Motts after the notice of execution because "competency can change and there are some factors that we know have an impact over competency such as a mood component where ... major depressive disorder ... can come back in time." She further stated that "it would be important for competency to be [evaluated] as close to the time" of execution.

In his order, Judge Hill denied Motts's counsel's request to have Motts re-evaluated immediately prior to his execution. Judge Hill explained that the request was "beyond the scope of the matter this court was directed to address by the Supreme Court in the remand order." However, he noted that counsel could present this request to this Court.

After careful consideration, we find that neither the circuit court nor this Court is required to issue an order for a court-appointed psychiatrist to interview Motts, in the absence of some indicia of incompetency, immediately prior to his execution to assure that he has remained competent.

Initially, we find that Judge Hill did not err in declining to order the requested evaluation as this was clearly outside the parameters of our remand order. As will be discussed, we find this Court's competency proceedings and the general procedural avenue of section 17–27–20 of the South Carolina Code should effectively alleviate Motts's counsel's concern that an incompetent inmate will be executed.

The Eighth Amendment prohibits the State from executing an incompetent individual. *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); *Council v. Catoe,* 359 S.C. 120, 597 S.E.2d 782 (2004); *Singleton,* 313 S.C. at 79, 437 S.E.2d at 56. In *Panetti v. Quarterman,* 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), the United States Supreme Court reiterated the holding in *Ford* and explained:

The prohibition applies despite a prisoner's earlier competency to be held responsible for committing a crime and to

be tried for it. Prior findings of competency do not foreclose a prisoner from proving he is incompetent to be executed because of his present mental condition. Under *Ford*, once a prisoner makes the requisite preliminary showing that his current mental state would bar his execution, the Eighth Amendment, applicable to the States under the Due Process Clause of the Fourteenth Amendment, entitles him to an adjudication to determine his condition. These determinations are governed by the substantive federal baseline for competency set down in *Ford*.

*Id.* at 934–35, 127 S.Ct. 2842.

In assessing a defendant's competency, this Court has recognized that there is a presumption of continued competency once a judicial determination of a defendant's competency has been established. *See State v. Drayton*, 270 S.C. 582, 243 S.E.2d 458 (1978) (holding failure of trial judge to order further examination and a hearing to determine defendant's competency to stand trial did not violate statute authorizing trial judge to order such examinations nor deprive defendant of due process where previous presiding judge had found, about two and a half months prior, that defendant was fit to stand trial and there were no additional facts to warrant further examination or hearing).[8]

Although *Drayton* involved a determination of a defendant's competency to stand trial, we believe it provides guidance in the instant case regarding Motts's competency to be executed. *Cf. State v. Finklea*, 388 S.C. 379, 384 n. 2, 697 S.E.2d 543, 546 n. 2 (2010) (distinguishing *Singleton* standard for competency from standard required to stand trial; stating *Singleton* standard "requires *only* that a party understand they have been sentenced to death for murder and be able to communicate rationally with counsel" (emphasis added) (citation omitted));

---

8. In his brief, Motts's counsel cites *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) and *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), for the proposition that the circuit court "had the inherent authority to order any steps it found necessary to assure [Motts] was competent prior to his execution." The Court in *Drayton* found *Drope* and *Pate* were inapposite given the defendants in those cases had never received a mental examination to determine competency. *Drayton*, 270 S.C. at 585, 243 S.E.2d at 459. Here, as in *Drayton*, Motts has received a judicial determination of competency. Thus, we find that neither *Drope* nor *Pate* support counsel's argument.

*Lonchar v. Thomas,* 58 F.3d 588, 589 (11th Cir.1995) (concluding "next friend" lacked standing to bring petition for habeas corpus on behalf of prisoner facing execution and recognizing that "a presumption of continued competency arises from a prior finding of competency").

Because this Court is responsible for the final determination of an inmate's competency to be executed, it has consistently questioned each inmate personally with respect to their continued competency and decision to waive any further appellate proceedings regarding their conviction and capital sentence. *Hill v. State,* 377 S.C. 462, 661 S.E.2d 92 (2008); *Reed v. Ozmint,* 374 S.C. 19, 647 S.E.2d 209 (2007); *Hughes v. State,* 367 S.C. 389, 626 S.E.2d 805 (2006); *State v. Passaro,* 350 S.C. 499, 567 S.E.2d 862 (2002); *State v. Torrence,* 317 S.C. 45, 451 S.E.2d 883 (1994).

If the Court determines that the inmate is competent, it can affirm the circuit court's ruling and order that the inmate's execution be carried out in accordance with section 17–25–370 of the South Carolina Code, which provides that a death sentence be carried out on the fourth Friday after the Commissioner of the prison system is notified of the final disposition. S.C.Code Ann. § 17–25–370 (2003). Thus, there is a relatively short delay between the Court's determination that an inmate is competent to be executed and the actual date of execution.

In the event an inmate alleges he is incompetent after an order of execution is issued by this Court, the inmate may apply for PCR on the basis of competency, pursuant to section 17–27–20(a)(6) of the South Carolina Code.[9] Subsequently, an evidentiary hearing would be held at which the inmate would be required to show by a preponderance of the evidence that he lacks the requisite competency for execution. If the PCR

---

9. S.C.Code Ann. § 17–27–20(a)(6) (2003) ("Any person who has been convicted of, or sentenced for, a crime and who claims ... [t]hat the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy; may institute, without paying a filing fee, a proceeding under this chapter to secure relief. *Provided, however,* that this section shall not be construed to permit collateral attack on the ground that the evidence was insufficient to support a conviction."); *Singleton,* 313 S.C. at 87, 437 S.E.2d at 60.

court finds the applicant incompetent, and this Court agrees, a stay of execution would be issued. If the inmate becomes competent, then the State would have to move for a hearing before the PCR judge in order to lift the stay of execution.

 Additionally, if the Court has reason to believe that the inmate is incompetent, it can then issue a stay of execution pursuant to a *"Singleton* writ." *See Singleton,* 313 S.C. at 84, 437 S.E.2d at 58 (finding failure of either prong of the two-part competency test is sufficient to warrant a stay of execution).

As a final note, if Motts's counsel's argument is taken to its logical extreme, it would mean that a defendant's competency must continue to be evaluated up to the moment of execution. Not only is an application of this interpretation impractical, it has been rejected by a few jurisdictions. *See* John E. Theuman, Annotation, *Propriety of Carrying Out Death Sentences Against Mentally Ill Individuals,* 111 A.L.R.5th 491, § 5 (2003 & Supp.2010) (discussing cases that have adjudicated whether the Federal Constitution's Eighth Amendment rule prohibiting execution of the insane requires a determination of sanity at the exact time of execution).

The Sixth Circuit Court of Appeals has provided a well-reasoned explanation for rejecting this interpretation. In *Coe v. Bell,* 209 F.3d 815 (6th Cir.2000), the Sixth Circuit Court of Appeals assessed whether the procedures followed by Tennessee state courts in determining whether a capital defendant's competency to be executed satisfied due process. In that case, Coe's murder conviction and sentence of death were affirmed on direct appeal. Subsequently, the Tennessee Supreme Court upheld a determination that Coe was competent to be executed. In his habeas corpus petition, Coe argued that "the Tennessee courts erred in deciding his competency to be executed because they evaluated his present competency rather than determining his future competency at the moment of execution." *Id.* at 824. Because Coe suffered from Dissociative Identity Disorder, which caused him to dissociate under stress, he claimed he would dissociate as his execution approached and would not have the requisite competency at the time of his execution. *Id.*

In rejecting Coe's argument, the Sixth Circuit reiterated the United States Supreme Court's holding in *Ford* and stated:

> We do not believe that the Supreme Court in *Ford* meant to require a state to determine a prisoner's competency at the exact time of his execution. It would be impossible to follow the procedural protections identified in the opinions of Justice Marshall and Justice Powell in a meaningful way in the moments before execution; a state could not make a sound decision in accordance with due process regarding a prisoner's competency to be executed at this time. Nevertheless, a state must make its determination when execution is imminent. *See Stewart v. Martinez–Villareal*, 523 U.S. 637, 644–45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). Whether the competency determination is made in the week or the month before the prisoner's scheduled execution, the state is entitled to exercise discretion in creating its own procedures "[a]s long as basic fairness is observed." *Ford*, 477 U.S. at 427, 106 S.Ct. 2595 (Powell, J., concurring).

*Id.* at 824–25.

Based on the foregoing, we believe this Court's procedures concerning an inmate's competency to be executed comply with the intent of Ford. By remanding to the circuit court for a competency hearing, this Court acquires an extensive evidentiary record regarding an inmate's mental health history as well as a judicial determination as to an inmate's competency. If the Court then personally questions an inmate, it is able to evaluate an inmate's competency shortly before the execution date. In the event an inmate becomes incompetent prior to execution, there is a PCR avenue available that could potentially result in a stay of execution.

## III. Conclusion

In conclusion, we affirm the circuit court's decision finding Motts competent to waive his direct appeal and that this waiver is knowing and voluntary. After conducting our statutorily-imposed duty to review Motts's capital sentence, we also affirm the sentence of death. Finally, given this Court's procedures and the PCR avenues available to Motts, we conclude that neither the circuit court nor this Court is required to order that a court-appointed psychiatrist interview

Motts immediately prior to his execution in the absence of some indicia of incompetency.

**AFFIRMED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.