697 S.E.2d 543

**The STATE, Respondent,**

v.

**Ron O. FINKLEA, Appellant.**

No. 26843.

Supreme Court of South Carolina.

Heard Feb. 4, 2010.

Decided July 26, 2010.

Rehearing Denied Aug. 19, 2010.

Senior Appellate Defender Joseph L. Savitz, III, of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Donald V. Myers, of Lexington, for Respondent.

Justice PLEICONES.

This case stems from the death of Walter Sykes, a security guard at the Selectron plant in Lexington County. A jury convicted Ron Finklea of murder with various aggravating circumstances, and recommended a sentence of death, which the trial court imposed. Finklea appeals, seeking a new sentencing. We consider the appeal in conjunction with mandatory proportionality review and, finding no error, we affirm.

## FACTS

On August 1, 2003, Angel Peters, a security guard at Selectron, was on duty when Finklea came to the plant around 2:00 AM.[1] He was wearing a jacket with a stripe across it.

---

1. Peters identified Finklea in a photographic lineup and in court.

Peters opened the doors and Finklea explained that he needed to use the ATM machine. She told him that it was not working, but let Finklea inside. After talking with Peters, Finklea left but then came back to the building. Finklea asked Peters questions about whether her company was hiring and at one point he followed her into the security room to get a phone number and flier. Finklea asked questions about security, such as how often Peters watches the cameras and who else was working security at night. When another security guard arrived, Finklea departed.

The following day, in the early morning hours of August 2, 2003, a man (Man # 1) wearing a jacket with a stripe across it came to the door of the Selectron plant. The State argued at trial and the evidence suggests that Finklea was Man # 1. Walter Sykes was the security guard on duty and, apparently thinking Man # 1 wanted to use the ATM, opened the door. The events that followed were captured on the plant's video system. As Man # 1 approached the ATM, Sykes entered the security office. Man # 1 then followed Sykes into the office and moments later emerged and opened the front door to allow a second man (Man # 2) to enter. Man # 2 carried a gasoline can, which he handed to Man # 1. Man # 1 entered the office again, then exited and approached the ATM and doused it with gasoline. Moments later, Sykes, bleeding from the neck and engulfed in flames, ran from the building. Sykes died on the front lawn from burns and gunshot wounds to the face and neck. From the video it is apparent that Man # 1 is both the person who shot Sykes and the person who set him on fire.

Finklea was arrested and, days later, attempted to hang himself in his cell. Though he survived the attempt, Finklea suffered a brain injury resulting in amnesia and claims that he cannot recall the events that occurred the day of the murder. Physicians who examined Finklea found evidence of brain damage and determined that he was likely not feigning memory loss.

Finklea was tried and found guilty of the murder of Sykes with the following aggravating circumstances: (1) the murder was committed while in the commission of a burglary while armed with a deadly weapon; (2) the murder was committed

while in the commission of a robbery while armed with a deadly weapon; and (3) the murder was committed while in the commission of physical torture. *See* S.C.Code Ann. §§ 16–3–10; 16–3–20(C)(a)(1)(c), (d), and (h) (2003). The jury recommended a sentence of death which the trial court imposed. Finklea was also found guilty of first-degree arson in violation of S.C.Code Ann. § 16–11–110(A); attempted safe-cracking in violation of S.C.Code Ann. § 16–11–390; possession of a firearm during the commission of a violent crime in violation of S.C.Code Ann. § 16–23–490; and criminal conspiracy in violation of S.C.Code Ann. § 16–17–410. Finklea now raises two issues which he argues entitle him to a new capital sentencing proceeding.

## ISSUES

I. Did the trial court err in finding Finklea competent to assist in his own defense during the sentencing portion of the trial?

II. Did the trial court err in allowing the Solicitor to ignite an incendiary device during his closing argument in the sentencing portion of the trial?

III. Proportionality review

## DISCUSSION

### I. Competency

██ During pre-trial hearings, Finklea's counsel noted that her client's memory loss would impact the trial in both the guilt and sentencing phase. The trial court found Finklea competent as to both phases of trial and Finklea argues on appeal only that the trial court erred in finding him competent to participate in the sentencing phase. We find the trial court's determination is supported by the evidence.

██ A person must be competent to stand trial. *See Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Drope v. Missouri,* 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in

preparing his defense may not be subjected to a trial." [2] *Drope*, 420 U.S. at 171, 95 S.Ct. at 903, 43 L.Ed.2d at 112–13.

The defendant bears the burden of proving his lack of competence by a preponderance of the evidence. *State v. Weik*, 356 S.C. 76, 81, 587 S.E.2d 683, 685 (2002), citing *Dusky*. The trial judge's ruling will be upheld on appeal if supported by the evidence and not against its preponderance. *Id.*

Finklea's counsel argued to the trial court that Finklea's amnesia prevented him from assisting his counsel at sentencing as he was unable to recall potential mitigating facts from the incident:

> In any capital case, I think the circumstances of the crime are critical when it comes to the penalty phase.... [L]et's say that based on these facts, [the jury] would have found both Mr. Finklea and [his accomplice] guilty no matter who pulled the trigger, certainly when it comes to the penalty phase, the circumstances of the crime are, they're central.
>
> If it was something that, you know, he startled me and it was just a horrible armed robbery gone bad, that's a lot more mitigating than, hey, he could identify me, so I blew him away. I mean, that's horribly aggravating.

Counsel conceded that Finklea would likely not succeed in the guilt phase and consequently, mitigation would be "dispositive." Based on her client's amnesia, she argued that he was not competent to proceed. Finklea testified prior to the trial and was questioned by both counsel and by the court. The trial judge later held a hearing regarding Finklea's competency and ultimately found Finklea competent to stand trial.

We find the trial court's ruling is supported by the evidence. Even assuming Finklea's amnesia is genuine, we decline to find him unable to assist counsel based on an inability to recall mitigating facts which may or may not exist. We note that Finklea was able to assist his counsel at sentencing in a

---

2. Finklea incorrectly references *Singleton v. State*, 313 S.C. 75, 437 S.E.2d 53, 58 (1993) for the "appropriate test" for competency. *Singleton* considers the question whether a defendant is competent to be executed. The *Singleton* standard for competency is different from the standard required to stand trial, as it requires only that a party "understand they have been sentenced to death for murder and be able to communicate rationally with counsel." *Id.*

number of ways, including: advising his counsel as to possible character witnesses; advising his counsel as to mitigating facts from his life, such as his military service; and making a statement to the jury in which he apologized for the crime, expressed remorse, and pleaded for his life. Moreover, any potential prejudice to Finklea's capacity to consult with his counsel due to his inability to recall the circumstances of the crime is lessened by the fact that the incident was captured on video. *See Wilson v. United States,* 391 F.2d 460, 463–64 (D.C.Cir.1968) (recognizing significance of ability to reconstruct evidence of the crime). Finally, we note that a number of jurisdictions have found that a defendant's inability to recall the facts of an alleged crime do not render the defendant incapable of assisting his counsel. *See* A.L.R.3d 544, §§ 2[a], 4 (2010).

Given the above, we find that the trial judge's ruling is supported by the evidence. We decline to adopt a competency standard for the sentencing phase of the trial different from that of the guilt phase. Finklea's bare assertion that his amnesia may have deprived him of the ability to present mitigating facts from the crime does not suffice to overturn the trial court's finding of competency. *See State v. Weik,* 356 S.C. at 81, 587 S.E.2d at 685.

## II. Closing Argument

■ During the State's closing argument in the sentencing portion of the trial, the Solicitor held a lighted match-shaped, metal fire-starter before the jury as he described Finklea lighting Sykes on fire. Defense counsel objected to the use of the fire-starter as overly prejudicial but the trial judge overruled the objection, noting that the use was allowed for demonstrative purposes. Finklea appeals the trial court's ruling and argues that the death sentence must be vacated as a result of the Solicitor's action. We find that the Solicitor's demonstration was not unduly prejudicial so as to warrant a new sentencing.

■ A trial judge is vested with broad discretion in dealing with the range and propriety of closing arguments and ordinarily his rulings on such matters will not be disturbed. *State v. Northcutt,* 372 S.C. 207, 222, 641 S.E.2d 873, 881

(2007). The appellant has the burden of showing that any alleged error deprived him of a fair trial. *Id.* The relevant question is whether the solicitor's action so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See id.* The Court must review the argument in the context of the entire record. *Id.*

■■ While the solicitor should prosecute vigorously, his duty is not to convict a defendant but to see justice done. *State v. Linder,* 276 S.C. 304, 312, 278 S.E.2d 335, 339 (1981). Consequently, the solicitor's closing argument must be carefully tailored so as not to appeal to the personal bias of the juror, nor be calculated to arouse his passion or prejudice. *Id.*

The Solicitor's closing argument [3] included the following to which Finklea objects:

> Can you imagine the horror, the horror of him seeing a bullet, the flash of the gun and it coming right into his lip? Can you imagine the horror of another shot going through his neck, and somewhere along in there he had to be on the floor, you remember Officer Mike Phipps that testified right here? He said, under that desk was blood splatter. He had to be below the desk. Did he shoot him when they're down, or they're down and then they get up and you remember that bloody hand print on the chair.

> And we're just getting started, now comes the real thing. Gasoline pouring on another human being and the fire, the fire, the burning. When you're cooking sometimes and you touch the stove or the frying pan or you reach the in oven and you touch that hot thing or you're grilling, whoo, oh, it hurts, it's painful. It grabs your attention, you probably run to the sink, want to put some water on it. Probably the most painful thing that a person can do—

> Defense counsel: Objection, Your Honor.

> Solicitor Myers: —is to be lit on fire.

> The Court: Basis for the objection?

---

**3.** The Solicitor also used a gas can and gun, neither of which was in evidence, during his closing argument. Though defense counsel made a timely objection to the gas can and gun, Finklea does not appeal the trial court's ruling permitting the demonstrative use of these objects.

Defense counsel: Solicitor Myers has just ignited some sort of fire device, appears to be some sort of lighter. It's extremely large. We believe it's prejudicial. It's meant to prejudice the jury, to enflame them.

The Court: Mr. Myers?

Solicitor Myers: Talking about the circumstances of this crime, Your Honor, physical torture.

The Court: The objection is overruled. The use of these things for demonstrative purposes is allowed.

Solicitor Myers: For that feeling and you can't get away from it. What about when you're burning trash and you got a bunch of limbs and leaves out there and you pour a little gasoline on it and you throw a match in there, whoof, the concussion just blows you back, sometimes it may singe your eyes. Well, what if it's all over your body and you can't get away from it, it's engulfed you? He's going back to the ATM machine. The last, last moments of a good man's life on fire.

It is clear the Solicitor was zealous in his closing argument. However, given the other evidence before the jury regarding the physical torture of Sykes, we find the Solicitor's use of the incendiary device was not unduly prejudicial. The jury was presented with the surveillance footage showing Sykes running from the building while engulfed in flames, Sykes's charred uniform, and autopsy photographs. Moreover, as noted, the Solicitor used a gas can and gun as props during his argument, neither of which was in evidence, just prior to the use of the fire-starter and Finklea does not challenge their use on appeal. Given these facts, we find Finklea has not met his burden of showing that the trial judge committed reversible error in permitting the Solicitor to use the fire-starter as a demonstrative device in his closing. *See Northcutt,* 372 S.C. at 222, 641 S.E.2d at 881.

### III. Proportionality Review

In accordance with S.C.Code Ann. § 16–3–25(C) (2003), we have conducted a proportionality review and find the evidence supports the jury's finding of aggravating circumstances and that the death sentence was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, after review

of other decisions, we find the sentence is neither excessive nor disproportionate to sentences imposed under similar situations. *See, e.g., State v. Passaro,* 350 S.C. 499, 567 S.E.2d 862 (2002) (capital sentence upheld where an aggravator was physical torture); *State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001) (capital sentence upheld for murder committed in course of armed robbery); *State v. Huggins,* 336 S.C. 200, 519 S.E.2d 574 (1999) (capital sentence upheld for murder committed in course of armed robbery).

## CONCLUSION

We find the trial court properly determined that Finklea was competent to participate in the sentencing phase and that the Solicitor's demonstrations during closing argument were not so prejudicial as to warrant new sentencing. The verdict and sentence of the trial court is therefore

**AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.