654 S.E.2d 870

**Richard C. DALTON, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 4323.**

Court of Appeals of South Carolina.

Submitted Dec. 1, 2007.
Decided Dec. 18, 2007.

132

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Molly R. Crum, of Columbia, for Petitioner.

Lanelle C. Durant, of Columbia, for Respondent.

ANDERSON, J.:

The post-conviction relief (PCR) court granted Richard C. Dalton's (Dalton) application for relief after finding his guilty plea was involuntary due to counsel's failure to interview witnesses. This court granted the State's petition to review the PCR court's decision. We reverse.[1]

## *FACTUAL/PROCEDURAL BACKGROUND*

Dalton was indicted for two counts of criminal sexual conduct with a minor second degree against two step-daughters, fifteen-year-old "Child A" and thirteen-year-old "Child B." Respondent was represented by appointed counsel. Concerning the charge involving Child A, Dalton pled guilty as indicted to one count of criminal sexual conduct with a minor second-degree on July 18, 2002. He waived presentment on the other charge involving Child B and pled guilty to one count of lewd act on a minor. Dalton was sentenced to: (1) twenty years for criminal sexual conduct with a minor second-degree, provided upon fifteen years the balance would be suspended with five years probation and (2) a concurrent term of fifteen years for lewd act on a minor.

At the guilty plea hearing, evidence of Dalton's guilt on the charge involving Child A was presented. The solicitor told the judge that Child A said Dalton fondled her, had sexual inter-

---

1. We decide this case without oral argument, pursuant to Rule 215, SCACR.

course with her at least four times, and engaged in oral sex. The judge was informed that Child B reported Dalton fondled her and made some oral sexual contact. Dalton admitted to a Department of Social Services caseworker that he would "eat [Child A] out," but he denied having sex. Additionally, Dalton gave a statement to police confessing he did have sex with Child A. Dalton only disagreed with the length of time over which the events occurred.

Dalton's counsel at the plea hearing indicated he had explained to Dalton the charges, the possible punishment, his constitutional rights including his right to a jury trial, and his right to present the lewd act charge to a grand jury. Counsel said Dalton understood and wished to plead guilty. The plea court advised Dalton that by entering a guilty plea he would give up his constitutional rights to (1) remain silent and not be compelled to testify against himself; (2) be tried by a jury of peers or equals to which the State would be required to prove his guilt beyond a reasonable doubt; and (3) confront and cross-examine witnesses presented against him as well as his right to call witnesses in his own behalf.

Regarding the lewd act charge, the plea court explained it was not a lesser included offense of criminal sexual conduct second degree and it had not been presented to a grand jury. The court informed Dalton a grand jury could determine probable cause and a trial would follow, or the grand jury could return a no bill. The plea court asked:

Q:  Do you understand that process?

. . .

A:  Yes, sir.

Q:  And do you still wish to give up your right of presentment of this charge to the Grand Jury.

A:  Yes, sir.

After assuring Dalton understood the constitutional rights that he would be giving up by pleading guilty, the colloquy continued as follows:

Q:  Understanding the nature of the charges against you and the consequences of a guilty plea, how do you plead to these charges, guilty or not guilty?

A:  Guilty.

Q: Do you understand that, when you plead guilty, that you will waive or give up any possible defenses that you might have to these charges?

A: Yes, sir.

Q: And do you also understand that, if you've given an incriminating statement in this case, that, by pleading guilty, that you will waive or give up the right to contest or challenge whether such a statement was freely and voluntarily given in accordance with your constitutional rights?

A: (Nods affirmatively.)

Q: Did you commit these offenses?

A: Yes, sir.

The plea court asked Dalton whether he understood the recommended concurrent sentences were not binding and he could be sentenced to the maximum on both charges. Dalton answered affirmatively. The court continued:

Q: You still wish to enter your plea of guilty?

A: Yes, sir.

Q: Now, Mr. Dalton, when you enter a plea of guilty—has anyone promised you anything or threatened you in order to get you to enter this plea of guilty?

A: No, sir.

Q: Are you entering this plea of your own free will and accord?

A: Yes, sir, I am.

Q: Are you satisfied with the manner in which [your counsel] has advised and represented you?

A: Yes, sir.

Q: Do you need any more time to speak with him?

A: No.

Q: You feel that he's done everything for you that he could have or should have done?

A: Well, he's—no, not really. I believe that he, he needs to bring up the fact that I know I'm guilty and I admit my fault here. But I have no criminal prior record at this, this matter. I—

Q: He's gonna be able to tell me that in a few minutes.

. . .

Q: What, what I'm asking you is up until—

A: He's done his, his job very well.

Q: All right. All right. So, you're completely satisfied with—?

A: Yes.

Q:—what he's done?

A: Yes, sir.

Dalton's counsel informed the plea court Dalton intended to plead guilty to spare the victims from having to testify. He explained Dalton's only prior record was limited to minor traffic offenses, and he was working and taking care of his family when charged. The judge was told that Dalton had developed a crack habit in the time leading up to the charges and this legal trouble was out of the ordinary for him. The court accepted Dalton's guilty plea, finding it was voluntarily, knowingly and intelligently made, with the advice and counsel of a competent lawyer with whom Dalton was satisfied.

Dalton failed to timely file and serve his *pro se* direct appeal. On November 25, 2002, he filed an application for post-conviction relief alleging ineffective assistance of counsel and involuntary pleas. An evidentiary hearing was held on May 28, 2004, and relief was granted by a written order on February 11, 2005. Dalton's petition for appeal bond was denied by the South Carolina Supreme Court, and the State filed a petition for writ of certiorari. Jurisdiction was transferred to this court on February 15, 2006.

## ISSUE

Did the PCR court err in finding that counsel was ineffective for failing to interview witnesses when Dalton pled guilty?

## STANDARD OF REVIEW

The proper standard of review of a post-conviction relief evidentiary hearing is whether "any evidence of probative value" exists to sustain the PCR judge's findings. *Wicker v.*

136

*State*, 310 S.C. 8, 11, 425 S.E.2d 25, 27 (1992); *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989). In a PCR proceeding, the applicant bears the burden of proving the allegations in their application. *Butler v. State*, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985); Rule 71.1(e), SCRCP.

Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984); *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985). The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. The applicant must overcome this presumption in order to receive relief. *Cherry*, 300 S.C. at 118, 386 S.E.2d at 625.

A two-pronged test is used in evaluating allegations of ineffective assistance of counsel. A PCR applicant who pleads guilty on the advice of counsel may collaterally attack the plea only by showing that (1) counsel was ineffective and (2) there is a reasonable probability that but for counsel's errors, the applicant would not have pled guilty and would have insisted on going to trial. *Roscoe v. State*, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001). When alleging that his guilty plea was induced by ineffective assistance of counsel, an applicant must prove that counsel's advice was not "within the competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

### *LAW/ANALYSIS*

Dalton argued his guilty plea was involuntary due to trial counsel's failure to interview witnesses before advising him to plead guilty. In the order granting Dalton's application for relief, the PCR court agreed and annunciated in its order:

> Had applicant's trial counsel consulted with the witnesses given him by the applicant, there is reasonable probability

that results of proceedings could have been different. As argued by Applicant, Trial Counsel's failure to interview any of the witnesses left this Applicant with no defense or evidence of mitigation at trial, effectively forcing him to throw himself upon the mercy of the court.

The Court finds Trial Counsel's argument that it was needless to interview witnesses due to Applicant's Statement is not convincing. Applicant's Statement did not address the charges comprising the lewd act, and was less conclusive on all elements of the CSC second degree charge. Applicant's witness who testified at the PCR Hearing called into question the credibility of the complaining witness and presented facts through which impeachment might have been obtained. Her testimony also presented other aspects of the events leading to the charges in a light substantially different from that presented by the Solicitor. Trial Counsel argued that had he elicited such anticipated testimony it would have served to anger the Judge. Considering Applicant is the one who received the twenty year sentence, Applicant should have been afforded that decision based on counsel's informed advice after counsel had actually heard what the witnesses had to say.

I find that Trial Counsel's representation fell below an objective standard of reasonableness and it is a reasonable probability that as a result the outcome of Applicant's court appearance would have been different. Trial Counsel was ineffective in failing to interview defense witnesses made known to him. Consequently, Counsel was unable to objectively evaluate Applicant's defense and intelligently advise Applicant. The negative effect of counsel's errors amounts to deficient performance which affected the outcome of the Applicant's court appearance.

The State contends that the PCR court erred in granting Dalton relief. We agree.

A guilty plea is a solemn, judicial admission of the truth of the charges against an individual; thus, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Therefore, statements made during a guilty plea should be considered conclu-

sive unless a criminal inmate presents valid reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347 (4th Cir.1975); *Edmonds v. Lewis*, 546 F.2d 566 (4th Cir.1976). An applicant may attack the voluntary, knowing, and intelligent character of a guilty plea entered on the advice of counsel by demonstrating that counsel's representation was below an objective standard of reasonableness. *Porter v. State*, 368 S.C. 378, 383–84, 629 S.E.2d 353, 356 (2006); *Roscoe v. State*, 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001). The "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In other words, the applicant must prove prejudice by showing that, but for counsel's inadequacy, there is a reasonable probability he would not have pleaded guilty and, instead, would have insisted on going to trial. *Suber v. State*, 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007).

██ To find a guilty plea is voluntarily and knowingly entered into, the record must establish the defendant had a full understanding of the consequences of his plea and the charges against him. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Roddy v. State*, 339 S.C. 29, 33–34, 528 S.E.2d 418, 421 (2000). "A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both." *Pittman v. State*, 337 S.C. 597, 600, 524 S.E.2d 623, 625 (1999).

██ "[T]he voluntariness of a guilty plea is not determined by an examination of the specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea and the record of the post-conviction hearing." *Harres v. Leeke*, 282 S.C. 131, 133, 318 S.E.2d 360, 361 (1984). "When determining issues relating to guilty pleas, this Court will consider the entire record, including the transcript of the guilty pleas and the evidence presented at the PCR hearing." *Roddy*, 339 S.C. at 33, 528 S.E.2d at 420. In considering an allegation on PCR that a guilty plea was based on inaccurate advice of counsel,

the transcript of the guilty plea hearing will be considered to determine whether any possible error by counsel was cured by the information conveyed at the plea hearing. *Wolfe v. State,* 326 S.C. 158, 165, 485 S.E.2d 367, 370 (1997).

## 1. Ineffective Assistance of Counsel

■ The PCR court granted relief based solely on counsel's failure to interview witnesses. Despite Dalton's statements to police and to DSS and his telling appointed counsel his crack habit caused him to act out of character, Dalton avers this failure forced him to plead guilty because it left him without any defense.

At the PCR hearing, Dalton maintained three witnesses could have helped his case: Faith Dalton (Faith), his ex-wife and mother of Child B; Sonya Cowart, his sister with whom he was living when charges were filed; and Tom Scruggs, his former employer. Dalton's attorney questioned him on the support these witnesses could have provided.

Q: And the question is, had he contacted the witnesses what would he have learned that would have helped your case?

A: I don't know, I'm not my witnesses, I don't know what they know. But I know that I was going to use them as my witnesses.

Dalton gave only general statements about how the women would have supported his case and he did not discuss Scruggs. He stated Faith, the complainant on Child B's incident report, lived with Child B and knew of her "activities and veracity"; and his sister would have been a beneficial witness because she had been around him and the child and knew of the child's "activities."

Dalton's appointed counsel admitted Dalton had expressed concern over the victim's dress and manner of conduct both in his statement to police and in their conversations. From the record, it appears this discussion concerned Child A. Counsel reasoned this was inadmissible, not a defense to having sex with a person under the age of sixteen, and possibly harmful to Dalton's case. Given the substantial evidence against Dalton, counsel focused on reducing the charges which carried a possible sentence of fifty-five years. Dalton's PCR counsel

only lightly addressed the witness issue when he asked appointed counsel:

Q: And did he ever provide you with the names of potential defense witnesses?

A: We talked about numerous witnesses. I looked through my file, I didn't have a list of thirty-three, but there was a lot. But the thing about his witnesses were as the witnesses testified in his statement and the victim's statement they both say they were the only ones there. He had no witnesses who were going to say, "Well, I was there and it didn't happen." All of his witnesses revolved around the fact that the girl conducted herself in what they felt was in an inappropriate manner, which is of no help and no use.

We do not agree with the PCR court that Dalton established ineffective assistance of his court appointed attorney. The transcript of the guilty plea clearly refutes Dalton's assertion that he believed he had a defense. At the PCR hearing, he was unable to explain how he would have benefited from these witnesses' testimony. *See Jackson v. State*, 329 S.C. 345, 353–54, 495 S.E.2d 768, S.E.2d 768, 772 (1998) (counsel not proven ineffective where "respondent failed to present any evidence of what counsel would have discovered or what other defenses respondent would have requested counsel pursue had counsel more fully prepared for trial"); *Moorhead v. State*, 329 S.C. 329, 496 S.E.2d 415 (1998) ("failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result."); *see also Glover v. State*, 318 S.C. 496, 458 S.E.2d 538 (1995) (counsel not ineffective where witnesses' testimony at PCR hearing not favorable to applicant's alibi defense).

The plea colloquy record indicates Dalton was fully informed of his constitutional rights, understood the charges, and was cognizant of the maximum sentences he could receive. Specifically, Dalton told the plea judge he understood by pleading guilty he would be waiving any possible defenses.

## 2. Prejudice

The PCR court order articulated the speculative notion that had "witnesses" been interviewed, "there is a reasonable

probability that results of the proceedings would be different." In our view, Dalton failed to prove he was prejudiced by the performance of his court appointed counsel.

Of the three witnesses Dalton identified as potentially helpful at the PCR hearing, only Faith testified. Faith and Dalton have four children together. When the charges were filed, their three boys lived with Dalton and were placed in foster care. At the PCR hearing, Faith Dalton testified:

Q: Do you know—did you know anything about any of the facts as far as the physical facts of what may or may not have happened?

A: No, sir.

Q: Okay. Do you have any knowledge concerning [Child B's] truthfulness?

A: Yes, sir.

Q: Well, based on your having lived with [Child B] and raised her, what is your opinion as to her truthfulness?

A: [Child B] is a very—until this day is a very dramatic person. She does not tell full truths. She can come up with a story off a limb and make you believe it. She can cry at the drop of a dime. She has done this numerous times throughout her life even as a small child. That is what has made it hard for me to believe that what [Child B] has stated against Richard Dalton, my ex-husband, is difficult to believe, not only because of her inability to be truthful but also her demeanor of how she handles situations. She is the type of child that if she don't want you to touch her she's going to let you know, she's going to do something about it. If she doesn't like what you say she's going to come to a defensive act, be it verbally or physically.

. . .

Q: You're saying she's not a shrink in the wall flower [sic]?

A: No, she's not.

Q: Now, things you just told me, did you tell anyone in connection with the case about those?

A: I didn't speak to anybody on Richard's behalf, I spoke to DSS case workers and that was it. That is the only

people that I spoke to and they wouldn't listen to anything I had to say.

. . .

Q: Were you there when Mr. Dalton pled?

A: Yes, sir, I was.

Q: Did the trial judge give you an opportunity to say anything?

A: The trial judge did, yes, sir.

Q: Did you take that opportunity?

A: No, sir.

Q: Why not?

A: Because the solicitor instructed me not to say anything at the trial due to the fact that I was fighting for custody of my children, and that if I said anything on behalf of Richard Dalton that I would not regain custody of my three boys, that they would remain in foster care.

Faith further stated she could have testified to Dalton's condition when he wrote the statement. She explained that he had a drug problem and often didn't remember what he had done.[2] However, on cross-examination, Faith admitted she was not present when Dalton gave his statement nor were they living together. From her testimony, the PCR judge held she offered facts through which Child B could be impeached. He additionally found the testimony contained "other aspects of the events leading to the charges in a light substantially different from that presented by the Solicitor."

■■■ We disagree and find no probative evidence in this testimony to support the PCR judge's findings, especially with the plea on the charge involving Child A. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989). Faith attended Dalton's plea hearing but chose not to speak. Dalton's testimony that his sister knew of Child B's activities did nothing to carry his burden. "This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or other-

---

2. At the PCR hearing, Dalton testified he told appointed counsel he was under the influence of cocaine when he gave his statement to the police and that he did not remember writing it.

wise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial." *Bannister v. State*, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998); *see, e.g., Pauling v. State*, 331 S.C. 606, 503 S.E.2d 468 (1998); *Glover v. State*, 318 S.C. 496, 458 S.E.2d 538 (1995); *Underwood v. State*, 309 S.C. 560, 425 S.E.2d 20 (1992); *Jackson v. State*, 329 S.C. 345, 495 S.E.2d 768 (1998). Mere speculation of what a witness' testimony may be is insufficient to satisfy the burden of showing prejudice in a petition for PCR. *Porter v. State*, 368 S.C. 378, 386–87, 629 S.E.2d 353, 358 (2006) (holding no evidence showed counsel's failure to interview a potential witness would have yielded a result different from that which defendant's counsel believed at the time of the plea; defendant pled guilty in light of the complete information that was available at that time).

## CONCLUSION

Although this court generally affords great deference to the PCR court's findings, in this case we conclude the record is devoid of any probative evidence to support Dalton's post-conviction relief. Accordingly, we **REVERSE** the decision of the PCR court and **REINSTATE** Dalton's guilty plea and sentences.

KITTREDGE and SHORT, JJ. concur.