**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Herbert Smalls, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2022-001151

———

Appeal From Charleston County
Clifton Newman, Circuit Court Judge

———

Unpublished Opinion No. 2025-UP-306
Heard May 6, 2025 – Filed September 3, 2025

———

**AFFIRMED**

———

Elizabeth Anne Franklin-Best, of Elizabeth
Franklin-Best, P.C., of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia, for Respondent.

———

**PER CURIAM:** In this post-conviction relief (PCR) action, Petitioner Herbert Smalls argues the PCR court erred in finding the record of the plea hearing sufficiently reconstructed so as to allow for meaningful appellate review, and in finding Plea Counsel was not ineffective. We affirm.

## BACKGROUND/FACTS

On April 25, 2007, police responded to reports of a shooting on Rivers Avenue in Charleston and found James Stewart lying on the ground with a gunshot wound to his upper chest. Stewart died at the scene. Stewart's ex-wife was with him at the time of the shooting and told police the two were walking down the street with their bike when two men approached them. One of the men pulled out a gun, shot Stewart in the chest at close range, and then left the scene on the Stewarts' bike. Stewart's ex-wife gave police a description of the two men, and police obtained a video from a nearby school showing the two men as they approached the area.

In May of 2007, Petitioner and his co-defendant were arrested in connection with an unrelated attempted armed robbery in Charleston. When questioned, his co-defendant gave a statement to law enforcement implicating himself and Petitioner in Stewart's murder. Petitioner was arrested for the murder on June 9, 2007, and held without bond. Police had originally arrested another man for the murder but dismissed the charges against him when they learned the man had been incarcerated at the time of the murder. Because of Petitioner's 1997 convictions for armed robbery and assault and battery with intent to kill, the State served him with notice of its intent to seek a sentence of life without the possibility of parole (LWOP) for both pending charges.

Petitioner was represented by attorney David Holton (Plea Counsel) on the murder charge, and attorney Alex Apostolou on the attempted armed robbery charge. On August 2, 2010, Petitioner pled guilty to murder in exchange for the State's agreement to dismiss the pending attempted armed robbery charge, to withdraw the LWOP notice, and to allow him to plead "straight up." Petitioner was sentenced to forty years. Plea Counsel filed a timely notice of appeal on Petitioner's behalf, which was summarily dismissed on error preservation grounds on November 8, 2010.

Petitioner filed an untimely pro se PCR application, which was dismissed by the circuit court as outside of the statute of limitations.[1] Petitioner appealed the dismissal, arguing for the first time that Plea Counsel was ineffective in failing to request a competency evaluation prior to his guilty plea. On April 28, 2015, the supreme court remanded the case for a hearing pursuant to *Ferguson v. State*, 382 S.C. 615, 677 S.E.2d 600 (2009), to determine whether Petitioner's mental incapacity

---

[1] Petitioner did not file the PCR action until September 20, 2013, more than three years after entering his guilty plea.

prevented him from filing a timely PCR application. The circuit court conducted a hearing and determined the statute of limitations should be tolled due to Petitioner's mental incapacity and granted him a belated evidentiary hearing to address the merits of his PCR.

Because of the long and tortured procedural history, it was 2018 before PCR Counsel requested the transcript of the plea hearing and discovered it had been destroyed.[2] A reconstruction hearing was convened on February 9, 2021, in front of the original plea judge. At the end of the hearing, the plea judge issued an order declaring the record of the plea hearing was sufficiently reconstructed.

An evidentiary hearing on Petitioner's amended application was held on March 22, 2021. Petitioner alleged in his amended petition that the guilty plea was not entered knowingly and voluntarily because of Petitioner's "diminished intellectual capabilities." At the evidentiary hearing, PCR Counsel also argued Plea Counsel was ineffective for failing to inform him of the weakness of the State's case, failing to review discovery with him, and failing to advise him of the consequences of his plea. Petitioner claimed his intellectual disabilities and mental health conditions prevented him from having a full understanding of the consequences of his plea, rendering his guilty plea unknowing and involuntary. The PCR court denied relief and dismissed the action with prejudice, finding Petitioner failed to produce any evidence of the alleged deficiency of Plea Counsel, failed to show that his plea was entered involuntarily, failed to show he was prejudiced by Plea Counsel's conduct, and failed to prove that he was incompetent at the time he entered the plea. The PCR court did not make any ruling regarding the sufficiency of the plea transcript reconstruction, but noted, "this Court respects [the plea judge's] finding that the plea transcript was appropriately reconstructed. This Court does not have the authority to set aside the order of another [circuit court judge]. . . . Accordingly, this is not an issue before the Court during this PCR proceeding." This appeal followed.

**STANDARD OF REVIEW**

---

[2] The State did not initially order the transcript of the proceeding because it sought to summarily dismiss the application as barred by the statute of limitations and did not believe a transcript was necessary. The circuit court summarily dismissed the action as untimely. The supreme court remanded the case for a *Ferguson* hearing in 2015, and the order setting the case for a full evidentiary hearing was entered on February 2, 2018, which was beyond the five-year retention period for court reporters under Rule 607(i), SCACR.

"In post-conviction proceedings, the burden of proof is on the [petitioner] to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). "[An appellate court] gives great deference to the factual findings of the PCR court and will uphold them if there is any evidence of probative value to support them." *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016). "Questions of law are reviewed *de novo*, and we will reverse the PCR court's decision when it is controlled by an error of law." *Id.*

## LAW/ANALYSIS

## I.  Sufficiency Of the Reconstructed Record

Petitioner argues the PCR court erred in finding the record of the plea hearing was sufficiently reconstructed.  We disagree.

Where a transcript has been lost or destroyed, an appellate court may remand to have the record reconstructed.  *See Whitehead v. State*, 352 S.C. 215, 221, 574 S.E.2d 200, 203 (2002).  In South Carolina, as in a majority of jurisdictions, "the inability to prepare a complete verbatim transcript, in and of itself, does not necessarily present a sufficient ground for reversal." *State v. Ladson*, 373 S.C. 320, 324, 644 S.E.2d 271, 273 (Ct. App. 2007) (quoting *Smith v. State*, 433 A.2d 1143, 1148 (Md. 1981)).  The party challenging a reconstructed record must show prejudice flowing from the inadequate record.  *Id.*  "[B]efore a defendant can establish that he is entitled to a new trial on the basis of an inadequate reconstructed record, he must identify a specific appellate claim that this court would be unable to review effectively using the reconstructed record." *Id.* at 325, 644 S.E.2d at 273 (alteration in original) (quoting *Harris v. Comm'r of Corr.*, 671 A.2d 359, 363 (Conn. App. Ct. 1996)).

At the reconstruction hearing, the plea judge did not have any recollection of Petitioner's plea hearing but explained his normal procedure for accepting guilty pleas.  He explained that he uses a checklist and always advises defendants of their rights when accepting a plea.  He detailed his customary plea colloquy and explained that he always makes a finding regarding whether the plea was made knowingly and voluntarily.  He further explained he would have followed up with additional questions if there were any issues about Petitioner's medications or mental health concerns, stating, "obviously, if there was an issue about competency to stand trial or plead, we wouldn't go any further."  He also expressed faith in Plea Counsel's abilities, stating that he was "an excellent lawyer" who had appeared in front of him a number of times and "always did a good job."

Julie Cardillo, the assistant solicitor who handled the plea on behalf of the State, also testified at the reconstruction hearing. She remembered some of the facts of the case, but did not remember the specifics of the plea hearing. Cardillo appeared before the plea judge more than fifty times in her nine years with the solicitor's office and testified to the judge's normal practice in accepting guilty pleas. Based on prior experience with the judge, she testified he would have stopped the plea if he were concerned about Petitioner having an intellectual disability or being under the influence of medications.

Plea Counsel was not present for the reconstruction hearing due to medical issues, but Defense Counsel Alex Apostolou, who was present at Petitioner's plea hearing, presented the most detailed testimony at the reconstruction hearing. Apostolou did not recall any mental health issues being discussed at the plea hearing. He testified that "if that topic . . . had been opened in the courtroom, it would have been explored." Apostolou specifically remembered that Petitioner agreed with the solicitor's recitation of the facts and admitted his guilt. He testified he and Plea Counsel had previously met with the solicitor and with Petitioner together regarding the charges, and he would not have allowed the plea to go forward if he felt there were any issues with Petitioner's competency.

In this case, Petitioner does not allege that the plea judge failed to adequately advise him of his rights, nor does Petitioner point to any specific issue that cannot adequately be addressed on appeal due to the transcript's alleged inadequacy. Petitioner was represented by able Plea Counsel. In addition, the transcript of the plea hearing is missing through no fault or wrongdoing of the State. Under these circumstances, we find no error in relying on evidence of the plea judge's "custom and practice," along with other evidence, to reconstruct the plea hearing, and we affirm the PCR court's finding that the plea hearing was sufficiently reconstructed. *See, e.g.*, *United States v. DeForest*, 946 F.2d 523, 525 (7th Cir. 1991) (citation omitted) ("The transcript of the guilty plea proceeding must affirmatively disclose the voluntary and knowing nature of the plea. In the absence of a transcript, the testimony of the defendant's attorney as to his and the trial court's custom and practice with respect to guilty pleas is sufficient to demonstrate compliance with constitutional standards."); *United States v. Dickerson*, 901 F.2d 579, 583 (7th Cir. 1990) ("Thus, an untranscribed court proceeding does not, in and of itself, require a holding that a guilty plea was infirm. Instead, we investigate the custom, practice[,] and law applicable to Illinois guilty pleas and if possible the particular court's practice to determine whether the plea was an intelligent and voluntary waiver of Dickerson's rights."); *United States v. Dickens*, 879 F.2d 410, 411–12 (8th Cir. 1989) ("When a prior conviction is a number of years old and there is no transcript

of the taking of the plea, 'evidence of the trial court's practice is precisely the evidence which the government will have at its disposal.' (citation omitted) We previously have recognized the validity of relying on evidence of the custom and practice of trial attorneys and judges to refute allegations of procedural infirmities."); *Commonwealth v. Quinones*, 608 N.E.2d 724, 730 (Mass. 1993) ("We see no impropriety . . . in relying on a judge's customary practice in taking guilty pleas to reconstruct the record.").[3]

## II. Ineffective Assistance of Counsel

Petitioner alleges Plea Counsel was ineffective in that he failed to explain his rights, the consequences of his plea, and the weakness of the State's case against him. In addition, Petitioner argues Plea Counsel failed to review the discovery with him even though Plea Counsel was on notice of Petitioner's "diminished intellectual capabilities." He argues that his diminished intellectual ability prevented him from understanding the consequences of his plea and he therefore did not plead guilty knowingly and voluntarily. The PCR court found that none of the evidence presented by Petitioner "explains if or how the prior difficulties prevented him from being able to knowingly and intelligently plead guilty . . . ."

A petitioner alleging his guilty plea was induced by ineffective assistance of counsel must prove counsel's advice to plead guilty was not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)

---

[3] This court asked the parties to brief the issue of whether the order finding the record sufficiently reconstructed was immediately appealable. Both the State and Petitioner asserted that the order is not immediately appealable and we agree. The legislature has limited those decisions and orders that are immediately appealable. S.C. Code Ann. § 14-3-330 (2017). "An order which does not finally end a case or prevent a final judgment from which a party may seek appellate review usually is considered an interlocutory order from which no immediate appeal is allowed." *Hagood v. Sommerville*, 362 S.C. 191, 195, 607 S.E.2d 707, 709 (2005). While the plea judge's order effectively denies Petitioner a new trial on the grounds of the insufficiency of the record, it does not finally end the case or prevent a final judgment from which a party may seek appellate review.

(quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The "prejudice" prong of the *Strickland* test focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. Specifically, when a petitioner claims counsel's deficient performance caused him to accept a plea, the petitioner "must show that there is a reasonable probability that, but for [plea] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Because "[a] guilty plea is a solemn, judicial admission of the truth of the charges against an individual[,] . . . a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed." *Dalton v. State*, 376 S.C. 130, 137, 654 S.E.2d 870, 874 (Ct. App. 2007). Admissions "made during a guilty plea should be considered conclusive unless [Petitioner] presents valid reasons why he should be allowed to depart from the truth of his statements." *Id.* at 137–38, 654 S.E.2d at 874. The societal interest in finality has "special force with respect to convictions based on guilty pleas." *Lee v. United States*, 582 U.S. 357, 368–69 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

Due process of law "prohibits the conviction of a person who is mentally incompetent." *Jeter v. State*, 308 S.C. 230, 232, 417 S.E.2d 594, 595 (1992). Under section 44-23-410(A)(1) of the South Carolina Code (2018):

> (A) Whenever a judge of the circuit court . . . reason to believe that a person on trial before him . . . is not fit to stand trial because the person lacks the capacity to understand the proceedings against him or to assist in his own defense as a result of a lack of mental capacity, the judge shall:
>
> (1) order examination of the person by two examiners designated by the Department of Mental Health if the person is suspected of having a mental illness or designated by the Department of Disabilities and Special Needs if the person is suspected of having intellectual disability or having a related disability or by both sets of examiners if the person is suspected of having both mental illness and intellectual disability or a related disability.

If the circuit court "believes the person may be unfit to stand trial, a competency evaluation is compulsory." *State v. Colden*, 372 S.C. 428, 441, 641 S.E.2d 912, 920 (Ct. App. 2007). Courts consider three factors in "determining whether further

inquiry into a defendant['s] fitness to stand trial is warranted. . . . [:] (1) evidence of irrational behavior; (2) demeanor at trial; and (3) prior medical opinion regarding ability to stand trial." *Id.* "In some instances, the presence of just one of the factors may justify further inquiry requiring a mental evaluation." *Id.* "The defendant bears the burden of proving his lack of competence by a preponderance of the evidence. . . ." *State v. Weik*, 356 S.C. 76, 81, 587 S.E.2d 683, 685 (2002).

During Petitioner's *Ferguson* hearing, Dr. Leonard Mulbry, a forensic psychiatrist, testified he evaluated Petitioner to determine whether "his capacity was impaired by mental illness to such an extent that it would impair his ability to file a timely PCR action." Dr. Mulbry reviewed Petitioner's school and SCDC records. He reviewed IQ tests administered when Petitioner was fifteen years old and he evaluated Petitioner when he was thirty-six years old and had been in SCDC custody for about six years. He found Petitioner's IQ showed he was between mild and moderately intellectually disabled. He found Petitioner's "adaptive behavior" was at a third-grade level and that he did not read or write. He testified Petitioner had been treated consistently for bipolar disorder while at SCDC. The *Ferguson* court tolled the statute of limitations and granted Petitioner a belated PCR, finding Petitioner had established, to a reasonable degree of medical certainty, that his "intellectual deficiencies and mood disorder would impair his capacity to recognize deadlines, execute a legal document, and meet the deadlines for executing the legal instruments."

At the PCR evidentiary hearing, Petitioner did not offer any expert testimony regarding either his mental health issues or intellectual disabilities. Dr. Mulbry did not testify at the evidentiary hearing, and his report was not admitted into evidence. PCR Counsel seemed to concede Petitioner was competent to enter the guilty plea and to focus solely on Petitioner's intellectual disabilities, stating:

> I don't think we ever alleged that there was competency [sic] to stand at trial, but I think the issue is whether or not, you know, my client was able – whether or not he was getting good advice from his attorney. I mean, I think there was a difference here about whether or not he was in a position to just say, all right, I'm going to go ahead and plea. Versus whether or not he was, you know, there was some issue about his **mental acuity** that he would have – **I'm not saying he would have failed a *Blair* Hearing at that time.** I'm just saying he was under a lot of medication and he might not have been making the best decisions. And he might not have been making intelligent decisions,

and he may have been over born by persuasion from his attorney.[4]

Petitioner testified he takes medication for mood swings and was on five different medications at the time of the PCR hearing. He testified he has been on medications since he was a little boy. He further testified he had always been in "special ed" classes in school and had suffered a head fracture as a child. Petitioner claimed he only saw Plea Counsel two times before the plea hearing, they never discussed the discovery, and he never saw any of the discovery. He alleged he only knew "a couple of days before court" that someone else had initially been arrested for the murder. He further testified he did not know until after he was sentenced that the witness had been unable to positively identify him. Petitioner also claimed Plea Counsel never informed him the State made an earlier plea offer for voluntary manslaughter.

Greg Voigt was the assistant solicitor assigned to Petitioner's case. Voigt was involved in plea negotiations and had prepared the case for trial but was sick on the day of Petitioner's guilty plea. He testified that the evidence in the murder case was not particularly strong. In reviewing his file, he did not believe the State conducted much of an investigation after Petitioner's arrest. Investigators attempted to interview the victim's ex-wife who witnessed the murder, but she "had a complete falling out" during the interview and was unable to make an identification. He believed he may have offered to allow Petitioner to plead to manslaughter because of the weakness of the State's case, but Petitioner rejected the plea offer. Once the case was placed on the trial list, the solicitor's policy was to withdraw any previous plea offers. Though Voigt testified the murder case was not the strongest, Petitioner's co-defendant was prepared to testify against him. Voigt felt the evidence against Petitioner in the pending attempted armed robbery case was much stronger than the evidence in the murder case. Voigt notified Petitioner of the State's intention to seek an LWOP sentence as to both pending charges. Voigt testified he had the leverage of the attempted armed robbery case to use against Petitioner in the murder case, which gave the State "multiple ways we could get him, even without getting a verdict on the murder case."

---

[4] Even taking the testimony of Dr. Mulbry into consideration, we find no error. During the *Ferguson* hearing, Dr. Mulbry offered no testimony as to what Petitioner's mental state or understanding was at the time he entered the guilty plea or how Petitioner's intellectual disabilities would have impacted his ability to understand the consequences of his plea agreement.

Petitioner's claim that his diminished intellectual capacity rendered his plea involuntary, and that he was not aware of the State's previous offer is contradicted by the testimony of attorney Alex Apostolou. Apostolou testified that while Petitioner was not "a very sophisticated defendant," he had no concerns about his competency. He testified that Petitioner was able to assist in his defense, was able to understand the nature of the charges against him, and was able to talk through the "elaborate" discovery materials. Apostolou testified that he would have had Petitioner evaluated if he had noticed any signs of incompetence. Apostolou testified he attended a meeting with the solicitor and Petitioner's Plea Counsel, and they had left the meeting with a plea offer. Apostolou and Plea Counsel then met with Petitioner with the purpose of communicating the plea offer. In addition, Petitioner had previously been convicted of two serious crimes, and there was no evidence or testimony that he had been found incompetent in any prior criminal proceeding.

Petitioner's own pro se filings, filed prior to entering his guilty plea, show that he understood very well the weaknesses of the State's evidence against him on the murder charge and had reviewed the discovery before entering his guilty plea. Petitioner filed a pro se motion for bond on May 3, 2008, several years prior to entering a guilty plea. In the motion, Petitioner references the following:

1. another man, Anthony Watley, had been previously charged with the murder and "Eyewitnesses placed Watley at the scene;"
2. written statements given by Curtis Nathaniel, Derrick Felder, and Darryl Johnson;
3. the witness Sheila Diane Ramsey gave three different statements to law enforcement that don't "coincide" and her credibility is suspect due to her prior criminal convictions and drug use;
4. the inconsistent statements made by his co–defendant Marcus Quarles, on June 6th and 7th, 2007, and the fact that Quarles "wrote 2 different statements;" and
5. "The State has no physical evidence to link [Petitioner to the murder] or to show that he harmed another individual."

Petitioner also wrote a letter to the court on February 2, 2010 (filed Feb. 26, 2010), where he states, "My co-defendant's statement is unreliable and his credibility is worth nothing. You know his past criminal history."

These pro se letters and motions, filed some years prior to his plea, show that Petitioner was aware of the State's evidence, the substance of the witnesses' statements against him, the lack of physical evidence implicating him, and that the

State previously charged another man with the murder. The information within the motions and letters could only have come from Petitioner. We find Petitioner's testimony that Plea Counsel never discussed the case with him wholly lacking in credibility based on Petitioner's pro se filings.

While both Voigt and Apostolou testified the State's evidence on the murder charge was not strong, they both agreed that the evidence in the attempted armed robbery case was stronger. The State had considerable leverage against Petitioner since both charges were eligible for a mandatory LWOP sentence. The State only needed a conviction on one of the charges to invoke the mandatory life sentence. As the U.S. Supreme Court stated in *Premo v. Moore*,

> "Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence . . . A risk . . . is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger[.]"

562 U.S. 115, 124-25 (2011).

We find Petitioner had a valid, strategic reason to plead to the murder and avoid a mandatory life sentence. Petitioner has failed to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

## CONCLUSION

We find Petitioner failed to show how he was prejudiced by any shortcomings in the reconstructed record. We further find Petitioner failed to meet his burden of showing Plea Counsel was ineffective in not requesting a competency evaluation prior to the plea. Finally, we find Petitioner has failed to meet his burden of showing Petitioner would not have pled guilty but for Plea Counsel's alleged failure to explain his rights, the weaknesses of the State's case, and the discovery. Based on the foregoing, the findings of the PCR court are affirmed.

**AFFIRMED.**

**THOMAS, HEWITT, and CURTIS, JJ., concur.**